FILED
United States Court of Appeals
Tenth Circuit

July 12, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ELIA IBARRA,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 11-9539

---

**ORDER**

---

Before **HOLMES**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

This matter is before the court on Respondent's "Motion to Amend

Published Decision" filed July 1, 2013. The motion is granted. The amended

opinion, filed nunc pro tunc to the original filing date, is attached.

Entered for the Court

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 1, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

ELIA IBARRA,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 11-9539

---

**On Petition for Review from the
Board of Immigration Appeals**

---

Mari Matsumoto (Mark R. Barr and Laura L. Lichter on the briefs) of Lichter
Immigration, Denver, Colorado, for Petitioner.

Lisa Morinelli, Trial Attorney, U.S. Department of Justice, Civil Division, Office
of Immigration Litigation, Washington, D.C. (Tony West, Assistant Attorney
General, Civil Division; and Terri J. Scadron, Assistant Director, Office of
Immigration Litigation, U.S. Department of Justice, Washington, D.C., with her
on the brief), for Respondent.

---

Before **HOLMES**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Elia Ibarra Rivas petitions for review of a Board of Immigration Appeals decision that found her Colorado conviction for "child abuse – negligence – no injury" to categorically constitute a "crime of child abuse, child neglect, or child abandonment" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1227(a)(2)(E)(i).[1] Because we conclude that Ms. Ibarra's Colorado conviction is not a "crime of child abuse, child neglect, or child abandonment" within the meaning of the INA, we GRANT her petition for review, REVERSE the decision of the BIA, and REMAND to the Immigration Court to reconsider Ms. Ibarra's application for discretionary cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).

**I.**

Elia Ibarra Rivas was brought to this country from Mexico in 1985 at the age of four. She has lived here for twenty-eight years, has paid federal income taxes, and is the mother of seven children, all U.S. citizens. Although her father was a lawful permanent resident, Ms. Ibarra was never naturalized while he was alive. At the time of the proceedings before the Immigration Judge (IJ), she had worked for the same employer for ten years.

In 2004, Ms. Ibarra pled guilty to one count of "child abuse – negligence –

---

[1] We will hereinafter refer to sections of the INA by their U.S.C. section numbers, after an initial citation to both.

no injury," a class three misdemeanor, in violation of COLO. REV. STAT. §§ 18-6-401(1)(a), (7)(b)(II).[2] The events leading up to that conviction are not entirely clear, but it appears undisputed that Ms. Ibarra's children were unintentionally left home alone one evening while she was at work.[3] The oldest child was ten at the time, and no child was injured.

In 2008, the Department of Homeland Security (DHS) initiated removal proceedings against Ms. Ibarra. She conceded removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), which makes non-citizens living in the U.S. without being admitted or paroled removable, but she asked the Immigration Court for discretionary cancellation of removal under 8 U.S.C.

---

[2] The record produced for the IJ contains a one-page judgment showing Ms. Ibarra's plea to the charge of "child abuse – negligence – no injury," COLO. REV. STAT. §§ 18-6-401(1) and (7)(b)(II). No other facts are recited in that judgment.

[3] Ms. Ibarra testified at her bond hearing before the IJ that she had left her children with her mother, who had gotten drunk and left the apartment. Admin. Rec. at 88. The IJ referred to "the actual [criminal] act she did, she left her children with a 10-year-old." *Id.* at 117. The IJ went on to comment: "She made a mistake in judgment, but I've often wondered. You know, I have two, I've raised up two kids and you wonder at what point can you leave your kids alone. I mean, when we lived on the second floor of a co-op for a long, long time, and the laundry was in the basement, so I'd have to leave them in the apartment and run down to the basement to move the clothes over from the dryer to the, or from the washer to the dryer. So, how long do you leave the kids and at what age can you do that, and every once in a while I'd need to go to the corner store to get something and so I would actually leave the house and go down the street a little ways. And, you know, I don't believe there's any real clear guidelines at what age you can leave children and what age you can leave them with their older siblings. So, I don't think this was a crime involving moral turpitude and I don't think it was a particularly, you know, reprehensible mistake that she made." *Id.*

§ 1229b(b)(1).  That section provides for discretionary relief from removal when

the applicant:

> (A) has been physically present in the United States for a
> continuous period of not less than 10 years immediately preceding
> the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2);
> 1227(a)(2), or 1227(a)(3) of this title . . . ; and
> (D) establishes that removal would result in exceptional and
> extremely unusual hardship to the alien's spouse, parent, or child,
> who is a citizen of the United States or . . . lawfully admitted for
> permanent residence.

8 U.S.C. § 1229b(b)(1).  The IJ said he would be "inclined to think that the

discretionary factors would tilt in her favor and that the hardship factors would be

satisfied on the record," Admin. Rec. at 118, but because he also decided that Ms.

Ibarra's Colorado conviction categorically constituted a "crime of child abuse"

under 8 U.S.C. §1227(a)(2)(E)(i), he found Ms. Ibarra ineligible for discretionary

cancellation of removal.  The Board of Immigration Appeals (BIA) affirmed,

holding that a conviction for "criminally negligent child endangerment" that does

not result in harm or injury "categorically" qualifies as a "crime of child abuse,

neglect, or abandonment" under the federal statute.  Admin. Rec. at 8.

On appeal, Ms. Ibarra contends the BIA's current interpretation of "crime

of child abuse, neglect, and abandonment" to extend to the full range of conduct

criminalized by COLO. REV. STAT. §§ 18-6-401(1)(a), (7)(b)(II) is an

impermissible and overbroad construction of 8 U.S.C. § 1227(a)(2)(E)(i).  For the

reasons set out below, we agree. It follows that Ms. Ibarra's conviction is not a "crime of child abuse, child neglect, or child abandonment" that would render her ineligible for discretionary cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C).

## II.

### A. The Immigration Statute

The INA in 8 U.S.C. § 1229b(b)(1)(C) pretermits the possibility of discretionary cancellation of removal if a noncitizen has been convicted of one of the crimes listed in 8 U.S.C. § 1227(a)(2). In cases like Ms. Ibarra's, the crimes listed pretermit eligibility for discretionary relief. Notably, however, a conviction for one of the listed crimes is also grounds for deportation of lawful permanent residents. 8 U.S.C. § 1227(a); *see Judulang v. Holder*, 132 S.Ct. 476, 483 (2011).

The crimes listed in § 1227(a)(2) as meriting these serious immigration consequences are crimes of moral turpitude; aggravated felonies; high speed flight from an immigration checkpoint; failure to register as a sex offender; controlled substance offenses; some firearm offenses; espionage, treason, threatening the president, and similar political crimes; human trafficking; and, relevant here, "[c]rimes of domestic violence, stalking, or violation of protection order, crimes against children. . . ." § 1227(a)(2)(A)-(F). The "crimes against children" provision was placed into § 1227(a)(2) in 1996, pursuant to the Illegal

-5-

Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-640. The provision states in relevant part:

> (E)(i) Domestic violence, stalking, and child abuse. Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable.

8 U.S.C. § 1227(a)(2)(E)(i). What Congress meant when it said "crime of child abuse, child neglect, or child abandonment" is the question we are asked to decide. Its answer determines not just whether removable immigrants like Ms. Ibarra are ineligible for discretionary relief, but also which lawful permanent residents may be deported. 8 U.S.C. § 1227(a).

The BIA has interpreted "crime of child abuse, child neglect, or child abandonment" broadly to include criminally negligent omissions which endanger children by creating a reasonable probability of harm but which do not lead to injury. *Matter of Velasquez-Herrera*, 24 I & N. Dec. 503 (2008); *Matter of Soram*, 25 I. & N. Dec. 378, 384-85 (2010). We agree with Ms. Ibarra that this definition is an impermissible interpretation of the federal statute and that her conviction is not a "crime of child abuse, neglect, or abandonment" under any permissible interpretation of § 1227(a)(2)(E)(i).

## B. The Categorical Approach and the Colorado Crime of Conviction

Before we discuss why we reject the BIA's current definition of "crime of child abuse, child neglect, and child abandonment," we pause to explain briefly

the "categorical approach" used to decide whether state convictions qualify as removable crimes under the INA. The categorical approach first requires ignoring a petitioner's actual conduct and examining only the minimum conduct needed for a conviction under the relevant state law. *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011) (citing *Taylor v. United States*, 495 U.S. 575 (1990)). If every conviction under a given state statute requires all the elements of the generic federal crime, then the state conviction is categorically a removable offense. *Montcrieffe v. Holder*, 569 U.S. ___ (2013) (Slip Op. at 5). If some conduct that would be criminal under the state statute fits within the definition of the federal predicate crime but some does not, a conviction under that state statute merits the modified categorical approach to determine whether the petitioner's actual conduct involved "all the elements of [the] generic" crime. *Taylor*, 495 U.S. at 602; *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007). Thus, "[w]hen the underlying statute reaches a broad range of conduct, some of which would constitute [the generic crime] and some of which would not, courts resolve the ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy." *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1109 (10th Cir. 2006) (internal quotation marks omitted).

The statute under which Ms. Ibarra pled guilty is COLO. REV. STAT. §§ 18-6-401(1)(a), (7)(b)(II). Subsection (1)(a) first provides:

A person commits child abuse if such person causes an injury to a

child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

§ 18-6-401(1)(a). This is a disjunctive list, containing three types of prohibited conduct:

- Causing injury to a child's life or health;

- Permitting a child to be unreasonably placed in a situation that poses a threat of injury to a child's life or health; or

- Engaging in a continued pattern of conduct that results in the child's death or serious bodily injury.

But one cannot be convicted under § 18-6-401(1)(a) alone because section (7) of the statute requires that the conduct listed in section (1)(a) be undertaken with a *mens rea* of at least criminal negligence, and then categorizes the crime according to both the seriousness of the *mens rea* and the seriousness of the result. Thus, § 18-401(7)(b) provides:

(b) Where no death or injury results, the following shall apply:
    (I) An act of child abuse when a person acts knowingly or recklessly is a class 2 misdemeanor; except that, if it is committed under the circumstances described in paragraph (e) of this subsection (7), then it is a class 5 felony.
    (II) An act of child abuse when a person acts with criminal negligence is a class 3 misdemeanor except that, if it is committed under the circumstances described in paragraph (e) of this subsection (7), then it is a class 5 felony.

Ms. Ibarra's crime of conviction under subsection (7)(b)(II) fell into the

-8-

lowest level in both the *mens rea* and result categories: "Where no death or injury

results . . . [and] when a person acts with criminal negligence[, child abuse] is a

class 3 misdemeanor." COLO. REV. STAT. §§ 18-6-401(1)(a), (7)(b)(II).[4] The

government does not dispute this characterization of Ms. Ibarra's conviction. A

class 3 misdemeanor is the least serious type of misdemeanor in Colorado and

carries a minimum penalty of a fifty dollar fine. COLO. REV. STAT. § 18-1.3-501.

In contrast, where the conduct is knowing or reckless and the child is seriously

injured, the crime is a class 3 felony, which carries a minimum penalty of four

years in prison. COLO. REV. STAT.§ 18-1.3-401.

Applying the categorical approach, we must now compare the elements of

Ms. Ibarra's state conviction with the generic federal definition of the crime of

"child abuse, child neglect, and child abandonment" listed in 8 U.S.C. §

1227(a)(2)(E)(i). *See Taylor*, 495 U.S. at 600; *see also Duenas-Alvarez*, 549 U.S.

at 187-95 (applying *Taylor* to an INA crime).

## C. The BIA's Evolving Definitions of "Crime of Child Abuse"

The BIA has made numerous attempts to create a federal definition of the

---

[4] Because we know from subsection (7)(b)(II) that Ms. Ibarra was convicted under the "no injury" prong, we also know that she was convicted under the second clause of § 18-6-401(1)(a), where the child was "permit[ted] to be unreasonably placed in a situation that poses a threat of injury," and not one of the other clauses, which require injury. Thus, Ms. Ibarra was convicted for the offense of "with criminal negligence . . . permit[ting] a child to be unreasonably placed in a situation that poses a threat of injury . . . [but leads to] no death or injury."

"crime of child abuse, child neglect, or child abandonment" over the years. At the time of Ms. Ibarra's state conviction in 2004, the BIA's criminal definition of child abuse was "any form of cruelty to a child's physical, moral, or mental well-being." *See Ochieng v. Mukasey*, 520 F.3d 1110, 1114 (10th Cir. 2008) (approving BIA definition from *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 996 (BIA 1999)). "Cruelty" means intentionally causing pain or suffering. *See* BLACK'S LAW DICTIONARY 405 (8th ed., 2004) ("cruelty: [t]he intentional and malicious infliction of mental or physical suffering on a living creature, esp. a human; abusive treatment . . . ." ). We think it highly unlikely that Ms. Ibarra's conviction would have fit the BIA's definition of child abuse in effect at the time of her guilty plea – "cruelty to a child" – because her conviction required neither intent nor injury, not even "mental" or "moral" injury.

By the time the government issued Ms. Ibarra's Notice to Appear on December 27, 2008, the BIA had expanded its interpretation of child abuse in *Velasquez*, 24 I. & N. Dec. 503, to encompass "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being . . . ." *Id.* at 517. Ms. Ibarra argued to the IJ that even under *Velasquez*, her conviction would not fit the BIA's definition of "crime of child abuse." The only federal court to consider *Velasquez* in a published opinion had interpreted it to require some injury to the child for a crime to constitute "child

-10-

abuse." *Fregozo v. Holder*, 576 F.3d 1030, 1037 (9th Cir. 2009).  Ms. Ibarra

relied on *Fregozo* to urge the IJ, and then the BIA, to hold that a conviction for

"child abuse" which required no injury could never constitute child abuse under

the BIA's own interpretation of the phrase in *Velasquez*.  The IJ disagreed,

finding *Fregozo* unpersuasive.

The BIA affirmed, relying on *Velasquez* and *Soram,* 25 I. & N. Dec. 378, a

case so recent it had not been decided when Ms. Ibarra filed her appeal to the

Board.[5]  In *Soram,* the Board expanded the definition of "child abuse" even

further.  It held that "child abuse, neglect, and abandonment" in 8 U.S.C.

§ 1227(a)(2)(E)(i) constitutes one "unitary concept," *id.* at 381, and that offenses

of child endangerment that do not result in "actual harm or injury" are included as

child "maltreatment."  *Id.* at 380-81.  *Soram* considered the exact Colorado statute

under which Ms. Ibarra was convicted, albeit the knowing/reckless subsection,

COLO. REV. STAT. § 18-6-401(7)(b)(I), instead of the criminal negligence

subsection, 7(b)(II).  Although noting this distinction between Ms. Ibarra's

---

[5] Whether newly expansive agency definitions of removable offenses can make old state convictions retroactively removable was not raised in this appeal, but we question whether such an approach would pass muster under the nonretroactivity principle set forth in *I.N.S. v. St. Cyr*, 533 U.S. 289, 323-24 (2001) (holding that "it would surely be contrary to 'familiar considerations of fair notice, reasonable reliance, and settled expectations" to allow a newly-enacted law to deprive noncitizens who had already pleaded to certain crimes of the possibilities available to them at the time of the plea).  *See also Judulang,* 132 S. Ct. at 489 n.12 (suggesting anti-retroactivity principles could equally apply to BIA decisions that deviate from law upon which petitioner relied in making plea).

conviction and Soram's, the BIA held that Ms. Ibarra's conviction fit into *Velazquez*'s ambit because "the range of culpable mental states" the Board had recognized there included "*criminally negligent* acts or omissions." Admin. Rec. at 8 (italics in original) (citing *Velazquez*, 24 I. & N. Dec. at 512).

The Board had stated in *Velasquez* that its inclusion of criminal negligence reflected a "growing acceptance" among states that criminally negligent acts could be criminal child abuse, 24 I. & N. Dec. at 511, yet it cited to only six state criminal statutes, including the Colorado statute at issue here, in support of that premise, i*d.* at n.11. In neither *Velasquez* nor *Soram* did the BIA decide whether the injury threatened had to be particularly substantial or imminent for an endangerment-type crime to fall into its definition of "child abuse." The Board expressly declined to make that decision, saying it was satisfied with Colorado's "reasonable probability" of injury standard. *Soram*, 25 I. & N. Dec. at 384-85 (citing *People v. Hoehl*, 568 P.2d 484, 486 (Colo. 1977) (en banc)). Rather than issue an authoritative statement as to what kind of "threat of injury" had to be at stake, the Board said it would undertake a "State-by-State analysis . . . to determine whether the risk of harm required by the endangerment-type language [in a given state statute of conviction] is sufficient to bring an offense within the definition of 'child abuse' under the Act." *Id*. at 382-83.

The result is that so long as there is a *mens rea* of at least criminal negligence, the BIA will decide whether a child endangerment crime is a

deportable offense only after the person has been convicted of it. Whether this *ex post* approach provides adequate notice to immigrants considering plea bargains, an argument not raised by Ms. Ibarra, it has resulted in the BIA arriving, at least for now, at a federal definition of "child abuse, neglect, and abandonment" that is coextensive with the definition of "child abuse" in COLO. REV. STAT. §§ 18-6-401(1)(a), (7)(b)(II), which includes criminally negligent omissions that cause a reasonable probability of harm but result in no injury or suffering on any child's part. The question before us is whether that definition of "child abuse" is what Congress intended when it enacted 8 U.S.C. § 1227(a)(2)(E)(i).

## III.

### A. Statutory Interpretation

While we review purely legal questions decided by the BIA de novo, *Ritonga v. Holder,* 633 F.3d 971, 974 (10th Cir. 2011), we apply *Chevron* deference to precedential BIA interpretations of ambiguous federal immigration statutes so long as the Board's interpretation does not contravene Congressional intent. *See Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). *Soram* and *Velasquez* constitute three-member precedential opinions of the BIA, so they would qualify for the familiar deference if it is applicable. *Carpio v. Holder*, 592 F.3d 1091, 1097 (10th Cir. 2010). But while the statutory text at issue here does contain *some* ambiguity, Congress's intent is not so opaque

as to grant the BIA the sweeping interpretive license it has taken.

We do not defer to agency interpretations of statutes until the "traditional tools of statutory construction yield no relevant congressional intent," *Exxon Corp. v. Lujan*, 970 F.2d 757, 762 (10th Cir. 1992) (internal quotation marks omitted), and the first place we look for congressional intent is the plain language of the statute. *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004). "With regard to this very statutory scheme [the INA], we [are] bound to assume that the legislative purpose is expressed by the ordinary meaning of the words used." *I.N.S v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987) (internal quotation marks omitted). Notably, the first word in the phrase "crime of child abuse, child neglect, or child abandonment" contained in 8 U.S.C. § 1227(a)(2)(E)(i) is "crime."

"Crime" means crime; not civil adjudication. This distinction is important because "child abuse" and "child neglect" are frequently defined in other areas of law: evidence law regarding child witnesses;[6] mandatory-reporting law;[7] and

---

[6] *See* 18 U.S.C. § 3509(a)(3) (1994) (relied on in *Velasquez*, 24 I. & N. Dec. at 510 n.5) (relating to the rights of child victims as court witnesses); 42 U.S.C. § 3796aa-8 (1994) (awarding grants for closed-circuit televising of child witnesses who were victims of abuse).

[7] *See* 42 U.S.C. § 13031(c)(1) (1994) (requiring child abuse reporting in federal jurisdictions); 25 U.S.C. § 3202(3) (1994) (relating to child abuse in Indian country); 42 U.S.C. § 5106g(4) (1994) (CAPTA) (defining "sexual abuse" for reporting purposes); see list of 38 states' reporting and child welfare laws cited in *Soram*, 25 I. & N. Dec. at 382, at www.childwelfare.gov/systemwide/laws_policies/statutes/define.cfm.

family welfare law.[8]  The terms are usually defined differently in civil law as compared to criminal law.  For example, many states define "child neglect" for family welfare purposes as something not requiring fault, but require that "child neglect" be done "willfully" or "recklessly" to constitute the *crime* of child neglect.[9]  The purpose of civil definitions is to determine when social services

---

[8] Frequently the definition for reporting purposes and child welfare proceedings is the same.  This definition of "child neglect" almost never requires any willful or bad intent on the parent's part.  For example, a "neglected child" in Idaho is someone "[w]hose parents . . . are unable to discharge their responsibilities . . . and, as a result of such inability, the child lacks the parental care necessary for his health, safety, or well-being."  IDAHO CODE § 16-1602(25)(b) (Westlaw through 2012 legislation).  If a child meets that definition, case workers investigate, are required to make a reasonable effort to rehabilitate the parents and improve their parenting capabilities, and if that is impossible, the child may be taken out of the parents' custody. *See* IDAHO CODE § 16-1619 (Westlaw through 2012 legislation).  All of this adjudication may happen without criminal conduct having occurred and without the criminal system being involved.  A conviction for the *crime* of child endangerment in Idaho requires "willfully" placing a child in danger.  IDAHO CODE § 18-1501 (Westlaw through 2012 legislation).

[9] For example, *compare* ALASKA STAT. § 47.17.290 (Westlaw through 2012 legislation) (defining "child neglect" for purposes of child welfare intervention as "the failure by a person responsible for the child's welfare to provide necessary food, care, clothing, shelter, or medical attention for a child") *with* ALASKA STAT. § 11.51.100 (Westlaw through 2012 legislation) (defining "endangering the welfare of a minor" in the criminal code, as "*intentionally* desert[ing] the child . . . . under circumstances creating a substantial risk of physical injury to the child.") (emphasis added); *compare* OKLA. STAT. ANN. tit. 10a, § 1-1-105(47) (Westlaw through 2012 legislation) (defining child "neglect" for family welfare purposes) *with* OKLA. STAT. ANN. tit. 10, § 7115 (Westlaw through 2012 legislation) (requiring that the neglect be "willful" or "malicious" to constitute a crime); *compare* TENN. CODE. ANN. § 37-1-102(b)(1)(Westlaw through 2012 legislation) (civil definition of child abuse not requiring knowing conduct) *with* TENN. CODE ANN. § 39-15-401(Westlaw through 2012 legislation) (criminal

(continued...)

-15-

may intervene.  The purpose of criminal definitions is to determine when an abuser is criminally culpable.

Congress did not say that one who has committed "child neglect" under family welfare law is removable; it said that one who has been "convicted" of a "crime of" child neglect is.  We must assume "that Congress says in a statute what it means and means in a statute what it says there."  *Hartford Underwriters Ins. Co. v. Union Planters Bank*, *N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted).  Proper statutory construction also requires considering a phrase's "placement and purpose in the statutory scheme." *Bailey v. United States*, 516 U.S. 137, 145 (1995).  Section 1227(a)(2)(E)(i) was placed by Congress in a section of the statute called "criminal offenses," which lists the "crimes" that render an immigrant deportable.

Notwithstanding the statute's plain use of the word "crime," the BIA relied in both *Velasquez* and *Soram* primarily on definitions of "child abuse" and "child neglect" from civil, not criminal, law to reach its present definition of "crime of child abuse, child neglect, and child abandonment."  *See Velasquez*, 24 I. & N. Dec. at 510 nn.5-6 (citing federal civil statutes); *Soram*, 25 I. & N. Dec. at 382 (citing a 2009 Department of Health and Human Services compendium of the civil laws of 38 states).  That approach reads the words "crime of" out of the federal

---

[9](...continued)
definition of child abuse requires knowingness).

statute, which we may not do. *See Leocal*, 543 U.S. at 12 (courts "must give effect to every word of a statute wherever possible."). The concurring board member in *Soram* noticed this problem and stated, "I find it most relevant to look to the criminal statutes of the various States in 1996, rather than the civil statutes," 25 I. & N. Dec. at 386-87 (Filppu, concurring). Although the concurring board member at least attempted to ask the right question, he still relied on several non-criminal laws[10] and unfortunately misunderstood many of the criminal child-endangerment laws he did cite.[11]

Because Congress intended to make only *crimes* of child abuse, child neglect, and child abandonment deportable, we must determine what "child abuse, child neglect, and child abandonment" meant in the criminal context in 1996,

---

[10] The concurrence cited Oklahoma and South Dakota's reporting laws, OKLA. STAT. ANN. tit. 10, § 7102 (Westlaw through 1996 legislation); S.D. CODIFIED LAWS § 26-8A-2 (Westlaw through 1996 legislation), to support her conclusion that the criminal laws of most states supported the outcome in *Soram*. Unlike those civil laws, Oklahoma and South Dakota both require willful conduct in their criminal child endangerment laws. OKLA. STAT. ANN. tit. 10 § 7115 (Westlaw through 1996 legislation); S.D. CODIFIED LAWS §§ 26-10-1, 25-7-16 (Westlaw through 1996 legislation).

[11] Some of the laws the concurrence cited required an injury. *See* MD. CODE ANN. Art. 27 § 35C (Westlaw through 1996 legislation) (now codified at MD. CODE ANN., Crim. Law § 3-601(a) (Westlaw through 2012 legislation); N.J. STAT. ANN. § 2C:24-4 (Westlaw through 1996 legislation); UTAH CODE ANN. §76-5-109 (Westlaw through 1996 legislation). Other laws the concurrence cited required intent, knowledge, or recklessness. *See* IOWA CODE ANN. § 726.6 (Westlaw through 1996 legislation); KAN. STAT. ANN. § 21-3608 (Westlaw through 1996 legislation); N.H. REV. STAT. ANN. § 639:3 (Westlaw through 1996 legislation). *Soram*, 25 I. & N. Dec. at 388 n.2 (Filppu, concurring).

-17-

when Congress amended the INA. Congress did not provide a definition of "crime of child abuse, child neglect, or abandonment" in § 1227(a)(2)(E)(i), as it did for "domestic violence." Nor did Congress cross-reference to federal criminal or sentencing law, as it did with the phrase "aggravated felony," which it cross-referenced from the INA, 8 U.S.C. § 1101(a)(43)(F), to 18 U.S.C. § 16. There is no federal crime of non-sexual "child abuse" nor any federal "child neglect" or "child abandonment" crime from which we might draw an authoritative federal definition of this type of crime. Moreover, the legislative history of § 1227(a)(2)(E) is almost nonexistent.[12]

In *Taylor*, the Supreme Court also dealt with a crime that Congress had left undefined, "burglary," and held that Congress did not intend this crime to be defined as whatever "burglary" meant in the state where the conviction occurred. Such an approach "would mean that a person convicted of unlawful possession of

---

[12] The little legislative history that does exist does not support the BIA's view that the "crime" of child abuse should be interpreted so broadly. In his remarks on the Senate floor, one of the co-sponsors of the Dole-Coverdell Amendment, which added the section at issue to the INA, said "[i]t is long past time to stop the vicious acts of stalking, child abuse, and sexual abuse. We cannot prevent in every case the often justified fear that too often haunts our citizens. But we can make sure that any alien that commits such an act will no longer remain within our borders." 142 Cong. Rec. S4613 1996 (Statements of Sen. Dole). Criminally negligent omissions that do not cause injury are neither "vicious" nor "acts," so it is doubtful that the legislators who enacted § 1227(a)(2)(E)(i) had these kinds of crimes in mind. *See Reves v. Ernst & Young*, 494 U.S. 56, 62-63 (1990) (Statutory text "must be understood against the backdrop of what Congress was attempting to accomplish in enacting the . . . Act[].").

a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.'" *Taylor*, 495 U.S. at 590-91.

This concern is no less pronounced with respect to the "crime of child abuse," where state criminal laws vary at the margins. For example, in Missouri, but not Delaware, leaving a child alone in a parked car is criminal child endangerment even if the child is not harmed. *Compare State v. Todd*, 183 S.W. 3d 273, 280 (Mo. Ct. App. 2005), *with State v. E.J.*, 2005 W.L. 3509700 (Del. Fam. Ct. 2005). In South Carolina, but not Nevada, a woman with a substance addiction who becomes pregnant can be convicted for criminal child abuse of the fetus. *Compare Whitner v. State*, 328 S.C. 1, 8 (S.C. 1997), *with Sheriff, Washoe County, Nev. v. Encoe*, 885 P.2d 596, 598 (Nev. 1994). And in Texas, failing to provide proper nutrition to a child is criminal child abuse, but it is not a crime in Indiana (although it would likely cause child protective services to become involved in every state). *Compare Ricketts v. State*, 598 N.E. 2d 597, 601 (Ind. 1992) *with Contreras v. State*, 54 S.W. 3d 898, 907 (Tex. Ct. App. 2001) (abrogated on different grounds by *Jennings v. State*, 302 S.W.3d 306 (Tex. Crim. App. 2010)).

As *Taylor* admonished, if a federally-listed crime meant whatever any state said it meant, that would lead to the "odd results" of an immigrant who left her child in a parked car being a deportable criminal if she happened to make this

-19-

questionable choice in Missouri, but not if she happened to do so in Delaware. "Without a clear indication . . . that Congress intended to abandon its general approach of using uniform categorical definitions to identify predicate offenses, we do not interpret Congress' omission of a definition of [a predicate crime] in a way that leads to odd results of this kind." *Taylor,* 495 U.S. at 591.[13] Using the categorical approach in immigration proceedings "avoid[s] this potential unfairness." *Montcrieffe*, 569 U.S. ___ (2013) (Slip Op. at 16) (quoting *Taylor*, 495 U.S. at 601).

Thus, absent "clear" evidence of Congressional intent to the contrary, we must assume that a crime listed by Congress in a federal statute has one generic meaning that is not "at odds with the generally accepted contemporary meaning of this term." *Taylor*, 495 U.S. at 596 (citing *Perrin v. United States*, 444 U.S. 37, 49, n.13 (1979)). *Taylor* instructs courts to find that "generally accepted contemporary meaning" by looking to "the criminal codes of most States." *Id.* at 598. Given that IIRIRA was enacted in 1996, we must identify the majority of states' consensus as of that year, "at the time Congress enacted the statute," to find the generic meaning of criminal child abuse. *Perrin,* 444 U.S. at 42; *see also Nijhawan v. Holder*, 557 U.S. 29, 47 (2009) ("We examined state statutes . . . in

---

[13] This rule reflects the presumption that "absent plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law, because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control." *Taylor*, 495 U.S. at 591 (internal quotations omitted).

effect in 1996, when Congress [enacted IIRIRA].").  When a state law "criminalizes conduct that most other States would not consider" to be a crime, a conviction under such a law cannot be a deportable offense.  *Duenas-Alvarez,* 549 U.S. at 190-91.

Not only must we interpret the words "child abuse, child neglect, and child abandonment" in the context of the criminal law in 1996, we must also focus on the ideas and concepts associated with those particular terms because

> where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.  In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

*Morissette v. United States*, 342 U.S. 246, 263 (1952).  While child abuse, child neglect, and child abandonment were not among the earliest common-law crimes, they have existed long enough to have "accumulated" legal tradition and certain "cluster[s] of ideas." *Id.  See*, *e.g.*, D.C. CODE § 22-901(b)(2) (Westlaw through 1996 legislation) (originally enacted in 1885); 720 ILL. COMP. STAT. § 5/12-21.6 (Westlaw through 1996 legislation) (originally enacted in 1877). Thus, while we agree with the BIA that the crimes of child abuse, child neglect, and child abandonment can be considered a "unitary concept," *Soram,* 25 I& N. Dec. at 381, the elements of this unitary concept must reflect the "cluster of ideas" behind the terms Congress actually used.  *Morissette*, 342 U.S. at 263.

-21-

For this reason, to determine the majority approach in 1996, we surveyed

not only crimes called child abuse, neglect, and abandonment, but also state

crimes denoted as child "endangerment," which substantially overlap with crimes

designated as child abuse, child neglect, and child abandonment. We also

included crimes sharing elements with abuse, neglect, endangerment, or

abandonment that were denominated as something else entirely, such as "cruelty

to children," GA. CODE ANN. 16-5-70(a) (Westlaw through 1996 legislation), or

"unlawful conduct toward child," S.C. CODE ANN. § 20-7-50 (Westlaw through

1996 legislation). But because Congress used three well-known terms of art, we

have interpreted the unitary concept of "child abuse, child neglect, and child

abandonment" without reference to crimes usually called "nonsupport,"

"contributing to delinquency," "enticement" of minors, or other sundry crimes

involving children that state criminal codes may include.[14] *See Gor v. Holder*,

---

[14] In some states, "contributing to delinquency" statutes also included a prong called "contributing to dependency," "deprivation," or "neglect" of a child. *See*, *e.g.*, ARIZ. REV. STAT. § 13-3613 (West, Westlaw through 1996 legislation) (enacted 1933). However, these statutes usually date from the early 20th century and have been supplanted by endangerment and neglect laws dating from the 1970s and 80s. *See*, *e.g.*, ARIZ. REV. STAT § 13-3623 (West, Westlaw through 1996 legislation) (enacted 1979). Moreover, these "contributing" statutes appear to be used almost exclusively to prosecute contributing to "delinquency," not contributing to "neglect." *See*, *e.g.*, *People v. Tennyson*, 790 N.W. 2d 354, 364 (Mich. 2010) ("There are no reported cases that address a conviction under [MICH. COMP. LAWS] § 750.145 [the "contributing" statute, which dates from 1927] on grounds of neglect."). In addition, unlike child endangerment and neglect laws, "contributing" statutes seem to target people other than adults in custodial roles, including other minors. *See*, *e.g.*, S.D. CODIFIED LAWS § 26-9-1

(continued...)

607 F.3d 180, 192-93 (6th Cir. 2010) (suggesting that nonsupport conviction would not be deportable offense under § 1227(a)(2)(E)(i)). We also excluded state crimes involving sexual abuse of a minor, because Congress made this a separately deportable offense under INA § 101(a)(43)(A).

## B. Generic Definition of Child Abuse

We examined the criminal laws of all fifty states and the District of Columbia in effect in 1996 to determine the majority approach to crimes of child abuse, abandonment, neglect, and endangerment. *See* Appendices. We determined that the BIA's interpretation of this unitary type of crime reaches conduct that the majority of states did not criminalize in 1996 because the BIA includes non-injurious conduct done with a *mens rea* of only criminal negligence.

In 1996, forty-eight states and the District of Columbia had statutes that criminalized endangering or neglecting children without facially requiring a resulting injury.[15] *See* Appendices. But twenty-seven states required a *mens rea*

---

[14](...continued)
(any person "other than a parent" can be guilty of causing, encouraging or contributing to the "abuse, neglect, or delinquency of any child. . . ."). We did not include these statutes in our survey unless there was evidence that the law was actually used to prosecute crimes of child neglect or endangerment. We did include them if there was no other no-injury-required child endangerment or neglect crime in a given jurisdiction.

[15] Because it was unnecessary, we have not assessed whether most states actually interpreted the laws we include in the Appendices to be no-injury crimes. Assuming *arguendo* that injury to the child is not a required element of the crime of child abuse, neglect, and abandonment for INA purposes, we therefore

(continued...)

of knowing or intentional. *See* Appendix A. Six jurisdictions required a

minimum *mens rea* of recklessness. Appendix B. Only eleven states clearly

criminalized non-injurious child endangerment where the culpable mental state

was only criminal negligence.[16] Appendix C. The minimum *mens rea* in the five

remaining states was unclear where the conduct did not result in injury.

Appendix D.

Thus, the majority of states in 1996, at least thirty-three, did not

criminalize endangering children or exposing them to a risk of harm absent injury

if there was only a culpable mental state of criminal negligence. Appendices

A, B. Accordingly, contrary to what the BIA has held, criminally negligent

conduct with no resulting injury to a child cannot serve as the generic federal

---

[15](...continued)
included state statutes which facially leave open the possibility that no-injury
conduct could be included. Most states, however, unlike Colorado's §
18-6-401(7)(b), do not contain a specific "no injury" prong. *See, e.g.*, IOWA
CODE § 726.6(2) (two categories for child-endangerment penalties: where
endangerment results in "serious injury," or where it does not result in "serious
injury.")

[16] We do not decide whether criminal negligence has exactly the same
meaning in all the states listed in Appendix C. It is sufficient to note that
criminal negligence always requires some extra element or elements to distinguish
it from tort negligence. 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 5.4
(2d ed. 2003). The key distinction between criminal negligence and recklessness
is whether an unreasonable risk is consciously disregarded (which makes the *mens
rea* recklessness) or whether the guilty party is not conscious of the unreasonable
risk but should be (in which case the *mens rea* is criminal negligence). *Id.* at §
5.4 nn. 25- 26; *see also United States v. Serawop*, 410 F.3d 656, 669 n.4 (10th
Cir. 2005).

definition for the "crime of child abuse, child neglect, or child abandonment."[17]

It is clear that Ms. Ibarra's conviction under COLO. REV. STAT. §§ 18-6-401(a)(1), (7)(b)(II) required neither injury nor a *mens rea* greater than criminal negligence. Subsection (7)(b)(II) of the Colorado statute does not leave open the possibility that the person was convicted of a crime requiring injury to the child or a more culpable *mens rea*, because those offenses are separately codified at subsections (7)(a) ("where death or injury results") and (7)(b)(I) (where no-injury conduct is knowing or reckless). Ms. Ibarra's conviction is therefore not categorically a crime of child abuse, child neglect, or child abandonment under 8 U.S.C. § 1227(a)(2)(E)(i). Nor is the modified categorical

---

[17] Because the *mens rea* element disposes of Ms. Ibarra's appeal, we need not address petitioner's argument that Colorado's statute is non-generic because it criminalizes child endangerment without requiring that the threatened harm be particularly imminent or severe. We note, however, that state child endangerment laws range from requiring that the threat to a child be "imminent" or "practically certain," *see Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); *Carmons v. State,* 26 S.W.3d 382, 385 (Mo. App. 2000), to requiring only a "reasonable probability" of harm, *see State v. Muhaney*, 975 P.2d 156, 159 (Ariz. App. 1999); *People v. Hoehl*, 568 P.2d 484, 486 (Colo. 1977) (en banc). Additionally, some states require that the threatened though unrealized harm be "serious" or "substantial," others do not. *Compare State v. Goff,* 686 P. 2d 1023, 1027 (Or. 1984), *and Arnold v. State,* 755 So.2d 796, 798 (Fla. Dist. Ct. App. 2000), *with People v. Dunaway*, 88 P.3d 619, 626 (Colo. 2004) (en banc) ("significant" risks are only "among the myriad injuries to children that the endangerment clause works to protect against"), *and State v. Castaneda,* 20 P.3d 368, 371 (N.M. 2001) (child endangerment can consist of failing to secure child restraint. Where injury to the child was required, a few more states included criminal negligence, but it was still only a minority position. *See*, *e.g.*, MONT. CODE ANN. § 45-5-206 (Westlaw through 1996 legislation); LA. REV. STAT. ANN. § 14-93 (West, Westlaw through 1996 legislation).

approach necessary in Ms. Ibarra's case because subsection (7)(b)(II) does not contain "several different crimes, each described separately." *Montcrieffe*, 569 U.S. ___ (2013) (Slip Op. at 5).

The BIA's decision to use Colorado's overly broad definition of the crime of child abuse to define "child abuse" under 8 U.S.C. § 1227(a)(2)(E)(i) effectively makes the law of the forum state outcome-determinative regarding what a deportable offense is under the federal statute. An immigrant who was convicted of negligent child abuse in Colorado would be deportable but an immigrant who engaged in the same conduct in the majority of states that do not criminalize such conduct would not be deportable. Such an approach has long been rejected as a method of interpreting the INA. *Gonzalez-Gonzalez v. Weber*, 472 F.3d 1198, 1202 (10th Cir. 2006); *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 913 (9th Cir. 2004); *Kahn v. I.N.S.*, 36 F.3d 1412, 1414 (9th Cir. 1994) (rejecting BIA's state-law-dependent analysis of common-law marriage); *Gerbier v. Holmes*, 280 F.3d 297, 299 (3rd Cir. 2002) (defining as aggravated felonies only state drug crimes having federal counterparts or containing trafficking components); *Moon Ho Kim v. I.N.S.*, 514 F.2d 179, 180 (D.C. Cir. 1975) (rejecting definition of "adultery" dependent on law of forum state); *c.f. Montcrieffe*, 569 U.S. ___ (2013) (Slip Op. at 16).

The government points to no evidence that Congress intended "crime of child abuse" to have an unusual or state-dependent meaning, nor does it

-26-

acknowledge that the BIA has enshrined this crime with a nongeneric definition. Instead, the government and the BIA claim that the BIA's definition comports with the "ordinary, contemporary, and common meaning of the term 'child abuse'" and "the term's established legal usage." Aple's Br. at 17 (quoting *Velasquez*, 24 I. & N. Dec. at 508-12). Both the government and the BIA stated the correct test, but both failed to apply it correctly.

As noted above, in *Velasquez* and *Soram*, the BIA relied mainly on civil definitions of "child abuse," which do not include a *mens rea* requirement. The Board at least restricted itself in *Velasquez* to the relevant time period and relied exclusively on statutes from around 1996, albeit civil ones. 24 I. & N. Dec. at 510 n.4. But instead of looking at how the *majority* of states criminalized child abuse, the Board referred to "a growing acceptance by 1996 that the concept of 'child abuse' included criminally negligent acts." *Id.* at 511. Citing statutes from only six states, including the subsection of the Colorado statute we address here, COLO. REV. STAT. § 18-6-401(7)(b)(II), *see id.* at n.11, the Board concluded that the term "crime of child abuse" in 8 U.S.C. § 1227(a)(2)(E)(i) should be interpreted "broadly" to include "any offense involving an intentional, knowing, reckless, *or criminally negligent* act or omission that constitutes maltreatment of a child." *Id.* at 512. This definition defies the rule in *Taylor* that predicate crimes reflect the law of "most States." 495 U.S. at 598. By *Soram*, the Board had even abandoned the proper time frame, canvassing statutes both non-criminal and non-

contemporaneous. *Soram*, 25 I.&N. Dec. at 382 ("As recently as July 2009, some 38 states . . . included in their civil definition of 'child abuse' . . . acts . . . that threaten a child with harm . . . ."). Civil statutes do not reflect the meaning of the criminal law, and laws from 2009 do not illustrate the state of the law in 1996.[18]

A permissible interpretation of "crime of child abuse, child neglect, or child abandonment" in 8 U.S.C. § 1227(a)(2)(E)(i) requires giving effect to the established legal usage and "contemporary and common meaning," *Perrin*, 444 U.S. at 42, of the phrase, taking into account the word "crime" and the specific crimes listed–abuse, neglect, and abandonment. If the BIA's definition accomplished as much, we would be required to defer to it even if we found it unwise. *Chevron*, 467 U.S. at 866 ("When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left

---

[18] In *Velasquez*, the Board referred to a definition of child abuse from the eighth edition of Black's Law Dictionary: "intentional or neglectful physical or emotional harm inflicted on a child." 24 I. & N. at 511 (alteration omitted). But the Board did not mention Black's corresponding definition of "child neglect," which explains that not all child neglect is criminal. BLACK'S LAW DICTIONARY 1061 (8th ed. 2004). "Local child-welfare departments investigate reports of child neglect. *In a severe case*, criminal charges may be filed against a person suspected of child neglect." *Id.* (emphasis added). Black's also cited a criminal law treatise in making it clear that "'neglect is not the same thing as 'negligence.'" *Id.* (citing TURNER, KENNY'S OUTLINES OF CRIMINAL LAW 108 n.1 (16th ed. 1952)). Notwithstanding the Board's awareness of Black's Law Dictionary, by the time it decided *Soram* its definition of the crime did not match the definition from Black's it had cited in *Velasquez,* because the new definition conflated neglect with negligence and failed to require the infliction of harm on a child. *Soram*, 25 I. & N. Dec. at 380-81.

open by Congress, the challenge must fail.").

But whether it is wise policy to define "crime of child abuse" in the INA to include criminally negligent non-injurious conduct, that is not a policy choice the BIA may make because Congress gave no indication it intended the crimes it detailed in § 1227(a)(2)(E)(i) to have idiosyncratic or state-dependent meanings. Given that the BIA's current definition falls so far outside the interpretive "gap" left by Congress, we are not required to defer to it.[19]  *Id.*; *see also Efagene*, 642 F.3d at 921, 924-25.

Similarly, the BIA's vague contention in *Velasquez*, 24 I. & N. Dec. at 512, that IIRIRA was meant to be "enforcement oriented" is not enough to establish a non-generic definition of a crime listed in the INA without some evidence that this was Congress's intent.[20]  *Taylor*, 495 U.S. at 591; *Morissette*, 342 U.S. at

---

[19] The case for deference to the *Velasquez/Soram* definition of "crime of child abuse, child neglect, and child abandonment" is made even weaker by the Board's inconsistency in defining this crime. *Cardoza-Fonseca*, 480 U.S. at 446, n.30.  And as *Velasquez*, *Soram*, and the present case illustrate, "the interpretation and exposition of criminal law is a task outside the BIA's sphere of special competence.  *Chevron* deference is not required where the interpretation of a particular statute does not implicate agency expertise in a meaningful way . . . ." *Singh v. Ashcroft*, 383 F.3d 144, 151 (3d Cir. 2004) (internal quotation marks, alterations, and citations omitted).

[20] Importantly, one of the purposes of the INA is "keeping families of United States citizens and immigrants united," *Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977), not just deporting people.  Criminal definitions of child abuse that include negligent, non-injurious conduct are likely to capture the kinds of mistakes that single caregivers are prone to make, see *supra* note 2 (remarks of IJ); *see also* Sarah Rogerson, *Unintended and Unavoidable: The Failure to*

(continued...)

263. The BIA's definition is particularly indefensible because not only is it nongeneric, it is nongeneric in an overinclusive way despite the canon that "ambiguity in criminal statutes referenced by the INA must be construed in the noncitizen's favor." *Montcrieffe*, 569 U.S. ___ (Slip. Op. 20-21).

In sum,"the full range of conduct" under COLO. REV. STAT. §§ 18-6-401(1)(a), (7)(b)(II), which includes non-injurious criminally negligent conduct, cannot serve as a proxy for a generic federal definition of the predicate crime of "child abuse, child neglect, and child abandonment" in 8 U.S.C. § 1227(a)(2)(E)(i).

## C. Conclusion

At the time Congress amended the INA to include crimes of child abuse, child neglect, and child abandonment as a basis for deportation, a clear majority of states did not criminalize such conduct when it was committed with only criminal negligence and resulted in no injury. Accordingly, Ms. Ibarra's conviction under COLO. REV. STAT. §§ 18-6-401(1)(a), (7)(b)(II) for negligently permitting her children to be placed in a situation where they might have been injured, when no injury occurred, does not fit the generic federal definition of

[20](...continued)
*Protect Rule and Its Consequences for Undocumented Parents and their Children*, 50 FAM. CT. REV. 580 (2012) (describing parents deported for criminally negligent conduct under Florida and New York child neglect law); Nina Rabin, *Disappearing Parents: Immigration Enforcement and the Child Welfare System*, 44 CONN. L. REV. 99, 105 (2011) (describing primary caregiver mother deported for child neglect under Arizona child abuse law).

child "abuse, neglect, or abandonment" in 8 U.S.C. § 1227(a)(2)(E)(i), and should not have prohibited her application for cancellation of removal under 8 U.S.C. § 1229b(b)(1).

We REVERSE the decision of the BIA and REMAND this case to the Immigration Court for further proceedings in keeping with this opinion.

**APPENDICES TO OPINION OF THE COURT**


**APPENDIX A**

Twenty-seven jurisdictions required a minimum *mens rea* of knowingness or intent for crimes not appearing to require a resulting injury to the child. *Alaska*: ALASKA STAT. § 11.51.100 (West, Westlaw through 1996 legislation); *Arkansas*: ARK. CODE. ANN. § 5-27-204 (Westlaw through 1996 legislation); *California*: CAL. PENAL CODE §§ 273a, 271 (West, Westlaw through 1996 legislation); *Delaware*: DEL. CODE. ANN. tit. 11 §§ 1102(a)(1)(a), 1101 (Westlaw through 1996 legislation); *Georgia*: GA. CODE §§ 16-5-70(a), 19-10-1 (Westlaw through 1996 legislation); *Hawaii*: HAW. REV. STAT. § 709-904(2), 709-902 (Michie, Westlaw through 1996 legislation); *Idaho*: IDAHO CODE ANN. § 18-1501 (Michie, Westlaw through 1996 legislation); *Illinois*: 720 ILL. COMP. STAT. 130/2, 5/12-21.6 (Smith-Hurd, Westlaw through 1996 legislation); *Indiana*: IND. CODE ANN. § 35-46-1-4(a) (West, Westlaw through 1996 legislation); *Kansas*: KANS. STAT. ANN. §§ 21-3608, 21-3604 (Westlaw through 1996 legislation); *Louisiana*: LA. REV. STAT. ANN. §14:79.1 (West, Westlaw through 1996 legislation); *Massachusetts*: MASS. GEN. LAWS. Ch. 119 § 39 (Westlaw through 1996 legislation), *see Commonwealth v. Nebel,* 795 N.E.2d 609, 612 (Mass. App. Ct. 2003) (explaining intent requirement of ch. 119 § 39, the child abandonment law); *Maryland*: MD. CODE. ANN. § 3-831[21], 10-219, 10-203 (Michie, Westlaw through 1996 legislation); *Michigan*: MICH. COMP. LAWS § 750.135 (Westlaw through 1996 legislation) (now codified at § 28.330 (Westlaw through 2012 legislation)); *Mississippi*: MISS. CODE ANN. §§ 97-5-39(1)[22]; 97-5-1 (Westlaw through 1996 legislation); *Montana*: MONT. CODE. ANN. § 45-5-622 (Westlaw through 1996 legislation); *New Jersey*: N.J. REV. STAT. § 9:6-3 (1996), *see State v. Demarest*, 599 A.2d 937, 942-43 (N.J. Super. Ct. App. Div. 1991) (explaining that both § 2C:24-4 and § 9:6-3 require a *mens rea* of "knowingness"); *Nevada*: NEV. REV.

---

[21] While MD. CODE ANN. § 3-831 is styled as a "contributing" statute (and applies to all adults, not just parents and custodians), it includes willfully causing or contributing to a child's being "in need of supervision, or in need of assistance." Maryland lacks any other no-injury child neglect / endangerment law other than §§ 10-219 and 10-203 (which both include child abandonment alongside nonsupport), so we include § 3-831 here.

[22] MISS. CODE ANN. § 97-5-39(1) is also styled as a "contributing" law (though it applies only to those with a custodial duty), and it includes contributing to "neglect." Like Maryland, Mississippi has no other criminal statute targeting child neglect or endangerment without requiring an injury other than child abandonment (at § 97-5-1), so we include § 97-5-39 (1) here.

STAT. ANN. § 200.508 (Westlaw through 1996 legislation), *see Smith v. State*, 927 P.2d 14, 18 (Nev. 1996) (explaining that section 200.508(1)(b) requires general intent); *Rice v. State*, 949 P.2d 262, 266 (Nev. 1997) (confirming that all prongs of section 200.508 require intent); *New Hampshire*: N.H. REV. STAT. ANN. § 639:3 (Michie, Westlaw through 1996 legislation); *North Carolina*: N.C. GEN. STAT. §§ 14-318.2, 14-316.1, 14-322.1 (Michie, Westlaw through 1996 legislation); *North Dakota*: N.D. CENT. CODE § 14-09-22 (Michie, Westlaw through 1995 legislation); *Oklahoma*: OKLA STAT. tit. 10, § 7115 (Westlaw through 1996 legislation); *Pennsylvania*: 18 PA. CONS. STAT. §4304(a)(1) (Purdon, Westlaw through 1996 legislation); *South Dakota*: S.D. CODIFIED LAWS § 25-7-15, 26-10-1 (Westlaw through 1996 legislation), *see State v. Beck,* 785 N.W. 2d 288, 292 (S.D. 2010) (explaining intent requirement of § 26-10-1); *Vermont*: VT. STAT. ANN. tit. 13, § 1304 (Westlaw through 1996 legislation); *Virginia*: VA. CODE ANN. §§ 20-61, 18.2-371[23] (Michie, Westlaw through 1996 legislation); *Wisconsin*: WIS. STAT. §§ 948.21, 948.03(4), 948.04(2), 948.20 (West, Westlaw through 1996 legislation).


## APPENDIX B

Six jurisdictions required a minimum *mens rea* of recklessness for crimes not resulting in injury to the child:  *District of Columbia*: D.C. CODE § 22-901(Westlaw through 1996 legislation) (now codified at § 22-11-01(Westlaw through 2012 legislation)); *Iowa*: IOWA CODE §§ 726.6, 726.3 (Westlaw through 1996 legislation); *Maine*: ME. REV. STAT. tit. 17, §§ 553, 554 (Westlaw through 1996 legislation); *Minnesota*: MINN. STAT. §§ 609.378(b) (Westlaw through 1996 legislation); *Ohio*: OHIO REV. CODE ANN. §2919.22(A) (Baldwin, Westlaw through 1996 legislation), *State v. Williams,* 486 N.E. 2d 113, 115 (Ohio Ct. App. 1984) (explaining that § 2919.22(A) requires a *mens rea* of recklessness); *Washington*: WASH. REV. CODE §§ 9A.42.030, 26.20.030 (West, Westlaw through 1996 legislation).


## APPENDIX C

---

[23]     VA. CODE ANN. § 18.2-371 is styled as a "contributing" statute but also includes acts contributing to making a child "abused or neglected."  We include it because, like Maryland and Mississippi, Virginia lacks any other no-injury crime apart from child abandonment. VA. CODE. ANN. § 20-61 (which appears to be combined with nonsupport: "deserts or willfully neglects or refuses to provide for child. . . .")

Eight jurisdictions required a minimum *mens rea* of criminal negligence for crimes not requiring a resultant injury: *Arizona*: ARIZ. REV. STAT. § 13-3623 (West, Westlaw through 1996 legislation); *Colorado*: COLO. REV. STAT. § 18-6-401(7)(b) (West, Westlaw through 1996 legislation); *Florida*: FLA. STAT. § 827.04 (West, Westlaw through Sept. 1996 legislation); *Missouri*: MO. REV. STAT. §§ 568.030, 568.032, 568.045, 568.050 (Vernon, Westlaw through 1996 legislation); *New Mexico*: N.M. STAT. ANN. § 30-6-1(C) (Westlaw through 1996 legislation), *see Santillanes v. State,* 849 P.2d 358, 362 (N.M. 1993) (explaining that "negligently" in § 30-6-1(C) means criminal negligence); *Oregon*: OR. REV. STAT. §§ 163.535, 163.545, 163.547, 163.575 (Westlaw through 1996 legislation); *Texas*: TEX. PENAL CODE ANN. § 22.041 (Vernon, Westlaw through 1996 legislation); *Wyoming*: WYO. STAT. ANN. § 6-4-403 (1996) (Westlaw through 1996 legislation).

Two states criminalized no-injury conduct with a minimum *mens rea* of tort negligence: *Nebraska*: NEB. REV. STAT. § 28-707 (Westlaw through 1996 legislation), *State v. Parks*, 565 N.W. 734, 738 (Neb. App. 1997) *rev'd on other grounds*, 573 N.W. 2d 453 (Neb. 1998); *South Carolina*: S.C. CODE ANN. § 20-7-50 (Westlaw through 1996 legislation), *State v. Jenkins*, 294 S.E.2d 44, 45-46 (S.C. 1982).

One state criminalized no-injury endangerment or neglect of children (if committed by parents or those with a duty of care) on a strict liability basis. *New York*: N.Y. PENAL LAW § 260.10(2) (McKinney, LEXIS through 1996 legislation), *People v. Scully*, 513 N.Y.S. 2d 625, 627 (N.Y. Crim. Ct. 1987).

**APPENDIX D**

Five states we did not place in any of the above categories because while their statutes facially seem to extend to no-injury scenarios, it is unclear what the minimum *mens rea* is where no injury occurs, and we discovered no case law resolving the question. *Alabama*: ALA. CODE § 13A-13-6 (Michie, Westlaw through 1996 legislation) (Alabama at least criminalizes intentionally abandoning children, ALA. CODE §§ 13A-13-5 (Michie, Westlaw through 1996 legislation), and "willfully maltreat[ing]" children, ALA. CODE. § 26-15-3 (Michie, Westlaw through 1996 legislation)); *Connecticut*: CONN. GEN. STAT. § 53-20 (Westlaw through 1996 legislation) (Connecticut at least criminalizes willfully endangering children, CONN. GEN. STAT. § 53-21 (Westlaw through 1996 legislation), *State v. Cutro*, 657 A.2d 239, 242 (Conn. App. 1995) (intent requirement of § 53-21)); Kentucky penalizes at least intentionally abandoning a child, KY. REV. STAT. ANN. § 530.040 (Baldwin, Westlaw through 1996 legislation)*; Kentucky*: KY.

REV. STAT. ANN. § 530.060 (Baldwin, Westlaw through 1996 legislation); [24]
*Rhode Island*: R.I. GEN. LAWS § 11-9-5 (Michie, Westlaw through 1996 legislation)[25]; *West Virginia*: W.VA CODE. § 61-8D-4(e) (Michie, Westlaw through 1996) (criminalizing "gross neglect" of a child that creates a substantial risk of serious bodily injury or death, but not explaining the *mens rea* required for gross neglect).

## APPENDIX E

The two states that did not appear to criminalize child abuse, endangerment, abandonment, or neglect in 1996 unless the child was injured were Tennessee and Utah. *See* UTAH CODE ANN. § 76-5-109(2) (Westlaw through 1996 legislation); TENN. CODE ANN. § 39-15-401 (Westlaw through 1996 legislation).

---

[24] Though this law is similar to a contributing statute, we include it because Kentucky has no other no-injury child neglect or endangerment laws apart from child abandonment. KY. REV. STAT. ANN. § 530.040 (1996).

[25] Rhode Island's law, called "cruelty to or neglect of child," dates from 1909 and has not been significantly revised since. It refers to "causing" and "permitting" the prohibited results without referring to a *mens rea* requirement. It is an omnibus law proscribing – in a list separated by commas – abandonment, nonsupport ("neglect or refuse to pay the reasonable charges for the support of that child"), contributing to delinquency, sexual or "improper" conduct with children, and permitting "the home of that child to be the resort of lewd, drunken, wanton, or dissolute persons." It applies only to parents or custodial adults. Relevant here, it also proscribes treating a child with "gross or habitual cruelty," and "wrongfully caus[ing] or permit[ting] the child to be an habitual sufferer for want of food, clothing, proper care, or oversight." We are unsure whether the additional prohibition on "render[ing] the home of that child a place in which it is unfit for the child to live" would require a pre-adjudication that the child is neglected or a showing that the child had suffered. We found no cases arising under this law where the child was not actually injured and in which the conduct was not knowing or intentional. However, the text seems to allow for the possibility of no-injury conduct, and no cases clarify whether there is a minimum required *mens rea*.