Florez v. Holder

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2014

(Submitted: December 16, 2014     Decided: March 4, 2015)

Docket No. 14-874

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Nilfor Yosel Florez,
a/k/a Nilfor Yosel Flores,

                    Petitioner,


          -v.-


Eric H. Holder, Jr.,
United States Attorney General,

                    Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

          Before:                    JACOBS, LIVINGSTON, and LOHIER, Circuit Judges.

          Nilfor Yosel Florez petitions for review of a final order of removal.  On

appeal, he challenges the Board of Immigration Appeals's broad interpretation of

the phrase "crime of child abuse" in the Immigration and Nationality Act.  8

U.S.C. § 1227(a)(2)(E)(i).  Because the agency's interpretation is reasonable, we

deny the petition.

RICHARD J. LINK, Rochester, New York, for Petitioner.

JANETTE L. ALLEN, Office of Immigration Litigation, Civil Division, United States Department of Justice (for Joyce R. Branda, Acting Assistant Attorney General, Civil Division; and Stephen J. Flynn, Assistant Director, Office of Immigration Litigation), Washington, District of Columbia, for Respondent.

DENNIS JACOBS, Circuit Judge:

Nilfor Yosel Florez, a lawful permanent resident of the United States, petitions for review of a final order of removal. Florez was twice convicted of child endangerment under New York State Penal Law § 260.10(1), most recently for driving under the influence of alcohol while his young children were in the car. Based on those convictions, an Immigration Judge ordered Florez's removal from the United States under 8 U.S.C. § 1227(a)(2)(E)(i), which permits removal of "[a]ny alien who at any time after admission is convicted of . . . a crime of child abuse, child neglect, or child abandonment." The BIA affirmed. Florez filed this timely petition for review, arguing that the BIA's broad interpretation of the statutory phrase "crime of child abuse" is unreasonable. We deny the petition.

2

Florez is a native and citizen of Honduras, and a lawful permanent resident of the United States. During his time in the United States, the State of New York has charged Florez with a variety of offenses, and convicted him of a few. As relevant here, Florez was twice convicted of endangering the welfare of a child, in violation of New York Penal Law § 260.10(1), for "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." The first conviction, in 2004, arose from Florez's involvement with a co-defendant who was charged with "acting in concert with another person" in the rape of a teenage girl (Florez's precise role in that incident is not clear). The second conviction, in 2010, resulted from Florez's driving under the influence of alcohol while his two children, aged one and nine, were in the car.

The Department of Homeland Security ("DHS") commenced removal proceedings in October 2013, charging Florez as removable under 8 U.S.C. § 1227(a)(2)(E)(i), which makes any alien removable if, "at any time after admission," the alien "is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment." Florez

3

admitted the factual allegations in the DHS charging documents, but he denied that he was removable under 8 U.S.C. § 1227(a)(2)(E)(i).

The Immigration Judge held that Florez's New York child-endangerment convictions each satisfied the generic federal definition of a "crime of child abuse." The decision, issued December 3, 2013, relied on two precedential opinions from the Board of Immigration Appeals: Matter of Velazquez-Herrera, 24 I. & N. Dec. 503 (BIA 2008), and Matter of Soram, 25 I. & N. Dec. 378 (BIA 2010). The BIA affirmed the Immigration Judge's order of removal on March 20, 2014, reasoning that Florez's case was controlled by Soram. Florez filed a timely petition for review.

**DISCUSSION**

Florez makes a single argument on appeal: that the BIA's interpretation of the statutory phrase "crime of child abuse," as including child-endangerment crimes for which injury to a child is not a required element, is so broad as to be unreasonable and not entitled to Chevron deference. Florez concedes that Soram's definition of "a crime of child abuse" is broad enough to include convictions under New York Penal Law § 260.10(1)--so we assume (without deciding) that it is. Accordingly, Florez's petition must be denied unless the

4

BIA's definition of "a crime of child abuse"--first issued in Velazquez-Herrera, then clarified and expanded in Soram--is insufficiently reasonable to support Chevron deference. We hold that the BIA's interpretation is a reasonable reading of a statutory ambiguity; so we deny the petition.

**I**

To determine whether a state conviction qualifies as a removable offense under the Immigration and Nationality Act ("INA"), we "generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013). Under the categorical approach, "we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition" that appears in the INA. Id. (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186 (2007)). Because this categorical inquiry focuses on the definition of the generic federal "crime," rather than on "the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal

5

offense.'" Id. (alterations in original) (quoting Johnson v. United States, 559 U.S. 133, 137 (2010)).

Some cases justify a deviation from this categorical approach. As relevant here: "where a statute is 'divisible,' such that some categories of proscribed conduct render an alien removable and some do not, application of a 'modified categorical' approach is appropriate." Akinsade v. Holder, 678 F.3d 138, 144 (2d Cir. 2012) (some internal quotation marks omitted). "[T]he purpose of the modified categorical inquiry is to determine which part of the statute of prior conviction the defendant was convicted of violating." United States v. Beardsley, 691 F.3d 252, 264 (2d Cir. 2012) (internal quotation marks omitted). In conducting this modified categorical inquiry, it is appropriate to "consult the record of conviction to ascertain the category of conduct of which the alien was convicted." Lanferman v. BIA, 576 F.3d 84, 89 (2d Cir. 2009). But "even under the modified categorical approach, the focus remains on the actual offense of *conviction*," rather than the particular facts of the alien's case. Alsol v. Mukasey, 548 F.3d 207, 216 n.8 (2d Cir. 2008).

This Court has already decided that New York Penal Law § 260.10(1) (text in the margin[1]) can be violated in two conceptually distinct ways: (1) by taking action that is "likely to be injurious" to a child, whether or not harm ensues; or (2) by allowing a child to work in a dangerous occupation. See Beardsley, 691 F.3d at 268 n.11. The parties agree that Florez was convicted solely under the "likely to be injurious" prong of the statute. So our review is limited to that wording.

The question for the BIA was this: is the crime for which Florez was convicted--"knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child"--categorically a "crime of child abuse" for purposes of the INA?

Florez concedes that the BIA's precedential opinions in Velazquez-Herrera and Soram, which defined the phrase "crime of child abuse" in the INA, are sufficiently broad that they "would include the offense of which Mr. Flores was

---

[1]    In New York, "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health."  New York Penal Law § 260.10(1).

convicted." Pet'r's Br. at 5. So if the BIA's broad definition of a "crime of child abuse" is a permissible one, the petition must be denied. The issue is one of first impression in this Circuit.

## II

"When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). First, we ask "whether Congress has directly spoken to the precise question at issue," id.--that is, whether the statute is unambiguous. As always, "[i]f the intent of Congress is clear, that is the end of the matter." Id. But "if the statute is silent or ambiguous," the second question for the court is limited to "whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

The BIA's precedential opinions interpreting the INA are entitled to Chevron deference. Mei Juan Zheng v. Holder, 672 F.3d 178, 183-84 (2d Cir. 2012). And the phrase "crime of child abuse" is "entirely a creature of the INA," so "we therefore give the BIA's interpretation of 'crime of child abuse' Chevron deference." Guzman v. Holder, 340 F. App'x 679, 681 (2d Cir. 2009) (summary order).

8

**A**

On the first <u>Chevron</u> question, we have little trouble concluding that the statutory provision is ambiguous. "Unlike the term 'crime of domestic violence' in § 1227(a)(2)(E)(i), the statute does not define the term 'crime of child abuse.'" <u>Hackshaw v. Att'y Gen. of U.S.</u>, 458 F. App'x 137, 139 (3d Cir. 2012) (non-precedential opinion). And state and federal statutes, both civil and criminal, offer varied definitions of child abuse, and the related concepts of child neglect, abandonment, endangerment, and so on. <u>See</u> <u>Soram</u>, 25 I. & N. Dec. at 382. So it is difficult to know precisely which sorts of convictions Congress had in mind when it used the phrase "a crime of child abuse" in 8 U.S.C. § 1227(a)(2)(E)(i). Ambiguity has been observed by all three Courts of Appeals to have considered the question. <u>See</u> <u>Ibarra v. Holder</u>, 736 F.3d 903, 910 (10th Cir. 2013) (rejecting the BIA's interpretation, but after acknowledging that "the statutory text . . . does contain *some* ambiguity"); <u>Hackshaw</u>, 458 F. App'x at 139 ("[W]e conclude that the statutory term 'crime of child abuse' in § 1227(a)(2)(E)(i) does not have a plain and unambiguous meaning."); <u>Martinez v. U.S. Att'y Gen.</u>, 413 F. App'x 163, 166 (11th Cir. 2011) (unpublished) ("The INA is ambiguous because it provides no definition of the term 'crime of child abuse.'").

9

**B**

Because the statutory language is ambiguous, we turn to the second step in the <u>Chevron</u> inquiry: whether the BIA's interpretation "is based on a permissible construction of the statute." 467 U.S. at 843. We hold that it is.

In <u>Velazquez-Herrera</u>, the BIA interpreted "the term 'crime of child abuse' broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." 24 I. & N. Dec. at 512. Despite this expansive definition in <u>Velazquez-Herrera</u>, it remained "unclear" whether the BIA's definition included child endangerment statutes--like New York Penal Law § 260.10(1)--which criminalized conduct that "did not actually *harm* a child." <u>Guzman</u>, 340 F. App'x at 682. But in <u>Soram</u>, the BIA confirmed that <u>Velazquez-Herrera</u>'s "definition of a crime of child abuse is sufficiently broad to encompass endangerment-type crimes," stating that it "is not limited to offenses requiring proof of injury to the child." <u>Soram</u>, 25 I. & N. Dec. at 381, 383.

The BIA's definition of "a crime of child abuse" is broad--intentionally so. See <u>Velazquez-Herrera</u>, 24 I. & N. Dec. at 509 ("In view of the fact that section

10

237(a)(2)(E)(i) of the Act is the product of a significant expansion of the grounds of deportability and was aimed at facilitating the removal of child abusers in particular, it is our view that the term 'crime of child abuse' should be interpreted broadly."). Florez asks us to reject the BIA's sweeping interpretation as inconsistent with the statute. But "the question before us is not whether it represents the best interpretation of the statute, but whether it represents a reasonable one." Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 744-45 (1996). And not all aggressive interpretations of a statute are unreasonable.

We conclude that the BIA's definition--broad as it is--is at least grounded in reason. When Congress amended the INA in 1996 to make child abuse a removable offense, at least nine states had crimes called "child abuse" (or something similar) for which injury was not a required element. See, e.g., New Mexico Stat. § 30-6-1 (1996) ("Abuse of a child consists of . . . permitting a child to be . . . placed in a situation that may endanger the child's life or health."). Black's Law Dictionary also offers a generic definition of "child abuse" that does not require injury: "[a]n act or failure to act that presents an imminent risk of serious harm to a child." Black's Law Dictionary 11 (9th ed. 2009) (second definition).

By the same token (as Florez points out) even *more* states used a definition that *did* require injury. But we are not looking for the best interpretation, or the majority interpretation--only a reasonable one. The BIA was not unreasonable in adopting a definition of child abuse that is consistent with the definitions used by the legislatures of Colorado, Kentucky, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, and Virginia.

Although the BIA's definition of "a crime of child abuse" is expansive, it is not unlimited. Soram confirms that a state child-endangerment statute qualifies as a "crime of child abuse" under the INA only if it requires, as an element of the crime, a sufficiently high *risk* of harm to a child. See 25 I. & N. Dec. at 385 (holding that Colorado's child-endangerment statute is categorically a "crime of child abuse" under the INA, in part because "[p]ermitting a child to be placed in a situation posing a threat involving *less* than a 'reasonable probability' of injury" is *not* "punishable as child abuse" in Colorado) (emphasis added). Florez has not disputed that the conduct criminalized by New York Penal Law § 260.10(1) rises to the level of risk contemplated in Soram, and the Immigration Judge did not explicitly conduct this inquiry. Nevertheless, as a general proposition, this

12

limitation ensures that the BIA's treatment of state child-endangerment statutes remains within the realm of reason.

## C

Our opinion in this case is in direct conflict with the Tenth Circuit's recent decision in Ibarra v. Holder, on which Florez heavily depends. Respectfully, we think Ibarra does not adhere to the principle that it is up to the BIA, in the first instance--not the federal courts--to fill interpretive gaps left by Congress in the INA. See Chevron, 467 U.S. at 843-44.

Ibarra reasoned that "[a]t the time Congress amended the INA to include crimes of child abuse, child neglect, and child abandonment as a basis for deportation, a clear majority of states did not criminalize such conduct when it was committed with only criminal negligence and resulted in no injury." 736 F.3d at 918. But the conclusion drawn by Ibarra and Florez--that the BIA's interpretation is unreasonable--does not follow from that premise.

True, the Supreme Court has interpreted similar congressional statutes with generic federal "crimes" by reference to how the relevant term is "used in the criminal codes of most states." Taylor v. United States, 495 U.S. 575, 598 (1990) (interpreting the word "burglary" in the Armed Career Criminal Act by

13

surveying the 50 states and selecting the majority rule). But the Supreme Court has never suggested that an *administrative agency* must employ that method to construe an ambiguous federal term that references state crimes. The agency is required to adopt a reasonable interpretation--not to proceed by any particular interpretative method.[2]

Agency deference is why, for example, the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien," INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987), is set aside if the BIA has reasonably interpreted the INA in favor of removal. See, e.g., Ruiz-Almanzar v. Ridge, 485 F.3d 193, 198 (2d Cir. 2007) ("It cannot be the case . . . that the doctrine of lenity must be applied whenever there is an ambiguity in an immigration statute because, if that were true, it would supplant the application of Chevron in the immigration context.").

---

[2] Duenas-Alvarez is not to the contrary. In that case, the Supreme Court applied Taylor to decide whether the generic term "theft offense" in the INA includes aiding and abetting theft, eventually settling on the rule used by "most States" (actually, in that case, all states). Duenas-Alvarez, 549 U.S. at 190. But the BIA had not issued a precedential opinion on the question, so in Duenas-Alvarez, there was no question of agency deference. That case says nothing about the interpretive flexibility available to the BIA in interpreting the INA.

Ibarra also violates the rule that deference is owed to reasonable agency interpretations even if a court has previously construed that very statutory provision differently. See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982-83 (2005). To illustrate: even if the U.S. Supreme Court had previously interpreted *this very statutory provision* to apply only to child abuse statutes for which harm was an element, that (hypothetical) precedent would not have foreclosed the BIA's interpretation here (unless, of course, the Court read the statute to be unambiguous). See id.

Finally, Ibarra erroneously relied on the BIA's inconsistency. See 736 F.3d at 918 n.19 ("The case for [Chevron] deference to the Velazquez/Soram definition of 'crime of child abuse, child neglect, and child abandonment' is made even weaker by the [BIA]'s inconsistency in defining this crime."). Although that approach might find support in older cases, more recent Supreme Court teachings have been clear: "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the Chevron framework." Brand X, 545 U.S. at 981; see also Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 55 (2011). In fact, "in Chevron itself, [the Supreme Court] deferred to an agency interpretation that was a recent reversal of agency policy." Brand X,

15

545 U.S. at 982. Prior agency interpretations are "not instantly carved in stone"; the agency is free to "consider varying interpretations and the wisdom of its policy on a continuing basis." <u>Chevron</u>, 467 U.S. at 863-64.

*　*　*

For all these reasons, we join the Third Circuit in holding "that the BIA's broad interpretation, which is consistent with the legislative purpose behind this new ground of deportability, is a reasonable construction of the term 'crime of child abuse' in the INA and is entitled to <u>Chevron</u> deference." <u>Hackshaw</u>, 458 F. App'x at 140. Whether we would have read the statutory wording the same way in the absence of an authoritative interpretation by the BIA is unlikely but irrelevant.

**CONCLUSION**

For the foregoing reasons, we **DENY** the petition for review.