**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1710
_____

MAGDIEL MONDRAGON-GONZALEZ,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent


_____

On Petition for Review of an
Order of the Board of Immigration Appeals
A060-104-346
Immigration Judge: Walter A. Durling
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2017
_____

Before:  VANASKIE, SHWARTZ, and FUENTES, *Circuit Judges*

(Filed: January 29, 2018)

Bridget Cambria, Esq.
Cambria & Kline
532 Walnut Street
Reading, PA 19601
    *Counsel for Plaintiff-Appellant Magdiel Mondragon-
    Gonzalez*

Attorney General Jeff Sessions, Esq.
Janette L. Allen, Esq.
Jennifer A. Bowen, Esq.
Barbara J. Leen, Esq.
Anthony C. Payne, Esq.
Jessica D. Strokus, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 848
Ben Franklin Station
Washington, DC 20044
    *Counsel for Defendant-Appellee Attorney General for
    the United States of America*

_____

OPINION OF THE COURT
_____

VANASKIE, <u>Circuit Judge</u>.

Magdiel Mondragon-Gonzalez petitions for review of a final order of the Board of Immigration Appeals upholding an Immigration Judge's decision directing that Mondragon-

Gonzalez be removed from the United States. The BIA determined that Mondragon-Gonzalez's conviction of unlawful contact with a minor in violation of 18 Pa. Cons. Stat. § 6318(a)(5) is a "crime of child abuse" constituting grounds for removal pursuant to 8 U.S.C. § 1227(a)(2)(E)(i). We agree with the BIA's determination and will thus deny the petition for review.

## I.

Mondragon-Gonzalez was admitted to the United States near El Paso, Texas in August 2008 on an immigrant visa. In April 2015, he pled guilty to unlawful contact with a minor.[1] Specifically, Mondragon-Gonzalez pled guilty to violating 18 Pa. Cons. Stat. § 6318(a)(5), which provides:

> A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

---

[1] In his guilty plea, Mondragon-Gonzales admitted to sending photos of his penis to a "XXX year old girl." (A52). The sentencing court indicated that Mondragon-Gonzalez contacted the female juvenile for the purpose of engaging in activity prohibited under 18 Pa. Cons. Stat. § 6312, *i.e.*, sexual abuse of children.

(5) Sexual abuse of children as defined in section 6312 (relating to sexual abuse of children).

The state trial court sentenced Mondragon-Gonzales to a prison term of 8 to 23 months.

On December 14, 2015, the Department of Homeland Security ("DHS") commenced proceedings to deport Mondragon-Gonzalez on the basis of his state court conviction. On March 1, 2016, the Immigration Judge found that Mondragon-Gonzalez's conviction fell within 8 U.S.C. § 1227(a)(2)(E)(i), one of the three statutory grounds for removal advanced by DHS.[2] Section 1227(a)(2)(E)(i), in pertinent part, provides that "[a]ny alien who at any time after admission is convicted of . . . a crime of child abuse . . . is deportable." The Immigration Judge concluded that Mondragon-Gonzalez's conviction constituted a "crime of child abuse" as that phrase has been interpreted by the BIA.

Agreeing with the Immigration Judge, the BIA dismissed Mondragon-Gonzalez's appeal. In doing so, the BIA compared the elements of the state criminal conviction and its interpretation of a "crime of child abuse" articulated in *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503 (BIA 2008);

---

[2] The Immigration Judge rejected the other two grounds for removal asserted by DHS: (1) that Mondragon-Gonzalez's conviction constituted an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii) as defined in 8 U.S.C. § 1101(a)(43)(A)(sexual abuse of a minor), and (2) his conviction qualified as an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43)(I)(child pornography).

4

*Matter of Soram*, 25 I. & N. Dec. 378 (BIA 2010); and *Matter of Mendoza Osorio*, 26 I. & N. Dec. 703 (BIA 2016). The Board found that the Immigration Judge was correct in sustaining the grounds for removal under § 1227(a)(2)(E)(i) because Mondragon-Gonzalez's conviction satisfied the elements of the crime of child abuse as established in the BIA's precedential decisions. Mondragon-Gonzalez timely petitioned for review by our Court.

## II.

Mondragon-Gonzalez challenges the BIA decision on two grounds. First, he argues that the Board's definition of what constitutes a crime of child abuse is unreasonable and should not be afforded *Chevron* deference. Second, he insists that the Pennsylvania law of which he stands convicted is not a categorical match of the BIA's interpretation of what constitutes a "crime of child abuse."

We accord *de novo* review to questions of law, including the BIA's interpretation of the INA, subject to the deference dictated by *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc*. 467 U.S. 837 (1984); *Cheruku v. Att'y Gen. of U.S.*, 662 F.3d 198, 202 (3d Cir. 2011). Under *Chevron*, we take a two-step approach, first deciding whether the statutory provision interpreted by the BIA is ambiguous and then, if it is, giving deference to the BIA's reasonable interpretation of the INA. *De Leon-Ochoa v. Att'y Gen. of U.S.,* 622 F.3d 341, 348 (3d Cir. 2010).

## III.

The crime of child abuse is not defined in the INA. Moreover, the meaning of the phrase, "crime of child abuse,"

5

as used in § 1227(a)(2)(E)(i) is not plain and unambiguous. *See Florez v. Holder*, 779 F.3d 207, 211 (2d Cir. 2015). We therefore must view the term as ambiguous, *i.e.*, requiring interpretation, and proceed to the second step of the *Chevron* inquiry: "whether the BIA's interpretation 'is based on a permissible construction of the statute.'" *Id.*

In *Velazquez-Herrera*, 24 I. & N. Dec. at 508, the BIA considered the legislative history of § 1227(a)(2)(E)(i), and surveyed both state and federal law defining the term "child abuse" at the time Congress enacted the current provision. *Id.* at 508-13. The Board arrived at the following working definition, interpreting the term broadly to mean:

> [A]ny offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in . . . sexually explicit conduct….

*Id.* 512. Building on this broad definition, the BIA held in a subsequent precedential opinion that the crime of child abuse is not limited to crime that require actual proof of injury to a minor—*i.e.*, evidence of a physical act. *Matter of Soram*, 25 I. & N. Dec. 378, 380-81 (BIA 2010).

6

Based on the case law and legislative history, we cannot say that the Board's interpretation of a crime of child abuse is unreasonable. As the BIA explained in *Matter of Velazquez-Herrera*, § 1227(a)(2)(E)(i) "was enacted . . . as part of an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a 'comprehensive statutory scheme to cover crimes against children' in particular." 24 I. & N. Dec. at 508-09 (quoting *Matter of Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 994 (BIA 1999)). Given Congress' evident intent to make crimes that harm children deportable offenses, we do not find the BIA's interpretation in this regard to be "arbitrary, capricious, or manifestly contrary to the statute." *Chen v. Ashcroft*, 381 F.3d 221, 224 (3d Cir. 2004). We, therefore, must defer to its definition of "crime of child abuse."[3] *Accord Florez*, 779 F.3d at 212.

Mondragon-Gonzalez's second argument—that his conviction under § 6318(a)(5) is not a categorical match to a crime of child abuse as defined by the BIA—is also unavailing. The BIA correctly determined that the Pennsylvania statute at issue satisfies the necessary intent to be considered child abuse

---

[3] We recognize that the Court of Appeals for the Tenth Circuit declined to accord deference to the BIA's construction of a crime of child abuse as articulated in *Velazquez-Herrera* and *Soram*. *See Ibarra v. Holder*, 736 F.3d 903, 915-18 (10th Cir. 2013). However, even if Ibarra's criticisms of the BIA's interpretation are persuasive, Mondragon-Gonzalez's conviction here would still constitute a crime of child abuse because his conviction does not fall within the "criminally negligent" aspect of a crime of child abuse, which is what the *Ibarra* court deemed unreasonable.

under § 1227(a)(2)(E)(i). *Velasquez-Herrera*, 24 I. &. N. Dec. at 512 (a crime of child abuse includes crimes "involving an intentional, knowing, reckless, or criminally negligent act or omission"). By its plain language, 18 Pa. Cons. Stat. § 6318(a)(5) requires intentional contact with a minor for the purpose of engaging in sexual abuse of children.

Second, the Pennsylvania statute meets the generic definitional requirement in § 1227(a)(2)(E)(i), that the act committed by the offender constitute maltreatment of a child such that there was a sufficiently high risk of harm to a child's physical or mental well-being. *See Matter of Mendoza Osorio*, 26 I. & N. Dec. at 704-05. Mondragon-Gonzalez argues that the Pennsylvania statute does not involve a sufficiently high risk of harm to a child because the statute only criminalizes communication with a child. Mondragon-Gonzalez, however, ignores the fact that a conviction under the Pennsylvania statute requires that the perpetrator "contacts or communicates with the minor *for the purpose of* engaging in the prohibited activity." *Com. v. Morgan*, 913 A.2d 906, 910 (2006) (emphasis in original). Thus, a conviction would not occur under the statute unless it had already been proven that the communication was intended for an illicit sexual purpose, and this is sufficient to create a high risk of harm to a child.

In his Reply Brief, Mondragon-Gonzalez seizes upon the recent decision in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017), to argue that a child for purposes of the INA's use of the term "crime of child abuse" means someone under the age of 16. Because Pennsylvania defines "minor" for purposes of the crime of unlawful contact with a minor as a person "under 18 years of age," *see* 18 Pa. Cons. Stat. § 6318(c), Mondragon-Gonzalez contends that the BIA erred in *Velazquez-Herrera* in holding that Congress intended that the

crime of child abuse cover individuals under the age of 18. He argues that the Pennsylvania crime of unlawful contact with a minor is broader than the INA "crime of child abuse," and thus his conviction cannot serve as predicate for his deportation.

Mondragon-Gonzalez's reliance upon *Esquivel-Quintana* is misplaced. The Court there was confronted with the question of "whether a conviction under a state statute criminalizing consensual sexual intercourse between a 21–year–old and a 17–year–old qualifies as sexual abuse of a minor under the INA." *Esquivel-Quintana*, 137 S. Ct. at 1567. Noting that the "age of consent" is the determinative factor in the generic offense of statutory rape, and the consensus view is that the age of consent is 16, the Court concluded that the state statute at issue did not categorically fall within the generic offense of statutory rape. *Id.* at 1568. Accordingly, the state conviction in that case could not serve as the predicate for removal.

Significantly, the Court did not decide that the generic crime of "sexual abuse of a minor" could never occur when the victim was at least 16 years old. On the contrary, the Court indicated that consensual sex that occurred as a result of the perpetrator abusing a position of trust could qualify as "sexual abuse of a minor" even if the victim is 17 years-old. *Id.* at 1572. Thus, *Esquivel-Quintana* does not support Mondragon-Gonzalez's claim that the "crime of child abuse" is limited to children under the age of 16. Indeed, *Esquivel-Quintana* has no application here at all.

IV.

Based on the foregoing, we will deny the petition for review.