19-1610-ag (L)
*New York State Dep't of Env't Conservation et al. v. Fed. Energy Regul. Comm'n*

# In the

# United States Court of Appeals

## For the Second Circuit

―――――――――――――

August Term 2020

Nos. 19-1610-ag (L), 19-1618-ag (Con)

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and SIERRA CLUB,

*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent,*

NATIONAL FUEL GAS SUPPLY CORPORATION
and EMPIRE PIPELINE, INC.,

*Intervenors.*

―――――――――――――

Petition for Review from the Federal Regulatory Energy Commission.
Nos. CP 15-115-002, CP15-115-003, CP15-115-004
(Argued October 29, 2020; Decided March 23, 2021)

B e f o r e :

LIVINGSTON, *Chief Judge,* PARKER AND LYNCH, *Circuit Judges.*

Petitioners New York State Department of Environmental Conservation and Sierra Club request that we vacate two orders of the Federal Energy Regulation Commission. These orders determined that the DEC had waived its authority under Section 401 of the Clean Water Act to issue or deny a water quality certification for a natural gas pipeline project sponsored by Intervenors National Fuel Gas Supply Corporation and Empire Pipeline, Inc. Petitioners challenge these orders on the ground that FERC erroneously concluded that Section 401's one-year deadline for state action may not be modified by an agreement between the parties. We agree with FERC's interpretation of the statute and conclude that the DEC waived its certification authority by failing to act within the statutory time limit.

Accordingly, we DENY the petition for review.

_____

BRIAN LUSIGNAN, Assistant Attorney General (Letitia James, Attorney General Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, Frederick A. Brodie, Assistant Solicitor General, Lisa M. Burianek, Deputy Bureau Chief, *on the brief)*, *for Petitioner New York State Department of Environmental Conservation*

MONEEN NASMITH (Meagan Burton, *on the brief*), Earthjustice, New York, NY, *for Petitioner Sierra Club*

SUSANNA Y. CHU, Attorney (David L. Morenoff, Acting General Counsel, Robert H. Solomon, Solicitor, *on the brief*), Federal Energy Regulatory Commission, Washington, DC, *for Respondent*

EAMON P. JOYCE, Sidley Auston LLP, New York, NY (Tobias S. Loss-Eaton, James R. Wedeking, Daniel J. Hay, Sidley Auston LLP, Washington, DC, *on the brief*), *for Intervenors*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

The New York State Department of Environmental Conservation ("DEC") and the Sierra Club challenge two orders of the Federal Energy Regulatory Commission ("FERC"). These orders determined that the DEC waived its water quality certification authority under Section 401 of the Clean Water Act by failing to act within one year of receiving a certification request. *See* 33 U.S.C. § 1341. The request was from National Fuel Gas Supply Corporation and Empire Pipeline, Inc. ("National Fuel") who planned to construct a natural gas pipeline through upstate New York.

FERC conditionally authorized the pipeline project. This authorization required National Fuel, as a condition for final approval, to demonstrate that it had received necessary state and federal permits (or waivers) including certification by the DEC under the Clean Water Act. The DEC denied certification, but FERC concluded that the denial came too late because, in violation of Section 401, it occurred more than one year after the DEC received National Fuel's application. FERC reached this conclusion despite an agreement between National Fuel and the DEC to alter the receipt date of the application in order to extend the one-year deadline by 36 days. This finding of waiver meant

3

that FERC effectively approved the pipeline without the water quality certification National Fuel was otherwise required to obtain from New York State.

This appeal followed. The DEC and the Sierra Club contend that the DEC's denial of certification was timely and that FERC should have honored the parties' agreement to alter the receipt date of the application. We disagree. We conclude that Section 401's one-year time limit may not be extended by the type of agreement between a certifying agency and an applicant used here and, therefore, FERC properly concluded that the DEC waived its certification authority. Accordingly, we deny the petition for review.

**BACKGROUND**

National Fuel proposes to construct a 99-mile long natural gas pipeline from western Pennsylvania to upstate New York known as the Northern Access 2016 Project. Before proceeding with this type of project, the Natural Gas Act requires a "certificate of public convenience and necessity" from FERC in addition to a number of other federal and state regulatory approvals. 15 U.S.C. § 717f(e); *id.* § 717n(a)(1), (2). In this case, because construction and operation of the pipeline could result in discharges into New York waterways, National Fuel was

4

required to obtain a water quality certification under Section 401 of the Clean Water Act that the proposed project would comply with the Act, with state water quality standards, and with various other requirements of state law. *See* 33 U.S.C. § 1341(a)(1), (d); *Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 143–44 (2d Cir. 2008); *see also Constitution Pipeline Co. v. N.Y. State Dep't of Env't Conservation*, 868 F.3d 87, 100–01 (2d Cir. 2017) (explaining these requirements), *cert. denied*, 138 S. Ct. 1697 (2018).

Accordingly, in March 2015, National Fuel applied to FERC for a certificate and, the following year, applied to the DEC for water quality certification. Under Section 401 of the Clean Water Act, states must "act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request," or their certification authority is waived. 33 U.S.C. § 1341(a)(1). If a state denies certification within the statutory time period, then "[n]o license or permit shall be granted." *Id.* If a state issues a certification contingent on the applicant's satisfaction of various conditions, the appropriate federal agency must incorporate those conditions into the final license. *See* 33 U.S.C. § 1341(d); *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 711–12 (1994) (quoting 33 U.S.C. § 1341(d)).

After the DEC received National Fuel's initial application on March 2, 2016, it requested additional information in August and October 2016 and, in response, National Fuel agreed to supplement its application. At some point after National Fuel was asked to supplement the second time, it became clear that the DEC would not be able to make a final determination within one year of the date of the initial application because it had not completed the notice-and-comment process required by the Clean Water Act and by state regulations.[1] *See* 33 U.S.C. § 1341(a)(1) (requiring a state agency to "establish procedures for public notice" of all applications and for public hearings); 6 N.Y.C.R.R. § 621.7 (setting out procedures and requirements for public notice and comment).

In an attempt to finesse the one-year deadline, the DEC and National Fuel entered into an agreement dated January 20, 2017, "revising the date . . . on which the Application was deemed received by [the DEC] to April 8, 2016." J. App'x 96. The agreement had the effect of extending the deadline for the DEC to issue or deny water quality certification by 36 days.

---

[1] The DEC published a Notice of Complete Application on January 25, 2017, which commenced a public comment period that ran through February 24, 2017. It received approximately 5,700 comments, either in writing or during three public hearings it convened during this period.

On February 3, 2017, FERC conditionally approved the project provided that National Fuel fulfilled various conditions, including filing "documentation that it has received all applicable authorizations required under federal law (or evidence of waiver thereof)." Order Granting Abandonment and Issuing Certificates, *Nat'l Fuel Gas Supply Corp.*, 158 FERC ¶ 61,145 (2017) ("Certificate Order"). On March 3, 2017, National Fuel sought rehearing of the conditional nature of the certificate, arguing, among other things, that the DEC waived its certification authority by failing to act within the 90-day deadline established by FERC for certain federal authorizations under the Natural Gas Act.[2] At that time, National Fuel did not contend that the DEC failed to act within the one-year review period under Section 401 of the Clean Water Act or challenge the validity of its written agreement with the DEC altering that time frame.[3]

---

[2] Pursuant to the Natural Gas Act, FERC adopted a regulation requiring "all Federal authorizations" required for a natural gas infrastructure to be filed within 90 days of the issuance of FERC's final environmental review of that project. 15 U.S.C. § 717n(c); 18 C.F.R. § 157.22. In this case, FERC issued the environmental assessment for the project in July 2016. Certificate Order ¶ 76.
[3] FERC did not immediately address the request, but instead issued a tolling order extending its deadline to act on the request for rehearing. *See infra* p. 9 (discussing FERC's practice of issuing tolling orders).

The DEC denied National Fuel's application on April 7, 2017, and National Fuel petitioned this Court for review.[4] While that petition was pending, National Fuel filed with FERC a "Motion for Expedited Action" on its March 3, 2017 rehearing request. Then, on December 5, 2017, National Fuel filed a "Renewed Motion for Expedited Action," arguing, for the first time, that the Department waived its certification authority by not acting within Section 401's one-year time limit. On August 6, 2018, FERC denied National Fuel's request for rehearing, concluding that the DEC was not required to act by the 90-day regulatory deadline set by FERC because that deadline did not apply where, as in Section 401, "a schedule is otherwise established by Federal law." Order on Reh'g and Mot. for Waiver Determination Under Section 401 of the Clean Water Act, 164 FERC ¶ 61,084, ¶¶ 37–38 (2018) ("Waiver Order").[5] Nonetheless, FERC

---

[4] This Court remanded the case with instructions "for the [the DEC] to more clearly articulate its basis for the denial and how that basis is connected to information in the existing administrative record." *See Nat'l Fuel Gas Supply Corp. v. N.Y. State Dep't of Env't Conservation*, 761 F. Appx. 68, 72 (2d Cir. Feb. 5, 2019). The DEC issued a revised denial on August 8, 2019. National Fuel subsequently sought judicial review of this revised denial. This Court granted the motion to hold that review in abeyance pending resolution of this proceeding. *See Nat'l Fuel Gas Supply Corp. v. N.Y. State Dep't of Env't Conservation*, No. 19-2888 (2d Cir. Sept. 24, 2019), ECF No. 27.

[5] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

8

concluded that the DEC waived its authority under Section 401 by not acting in one year (i.e., by March 2, 2017), despite the parties' agreement to extend that deadline to April 7. In doing so, FERC acknowledged that National Fuel did not raise the waiver argument under Section 401 until its December 2017 filing, nine months after the deadline had passed for submitting a rehearing request under the Natural Gas Act. But FERC treated the filing as a separate motion requesting a waiver determination, which, under its regulations, can be filed "at any time." J. App'x 237 n.10. FERC then concluded that Section 401 established a deadline that could not be extended by private agreement.

The DEC moved for rehearing, arguing that its agreement with National Fuel was not barred by Section 401 and that FERC erred in treating National Fuel's December 2017 filing as a motion for a waiver determination. Although FERC was required by Section 19(a) of the Natural Gas Act to act on rehearing requests within 30 days, it issued one of its then-common tolling orders to extend that deadline indefinitely. *See Allegheny Def.e Project v. Fed. Energy Regul. Comm'n*, 964 F.3d 1, 13 (D.C. Cir. 2020) (en banc) (disapproving the use of tolling orders under 15 U.S.C. § 717r(a)).[6] On April 2, 2019, nearly eight months after the

---

[6] *See* discussion *infra* p. 12.

rehearing requests were filed, FERC eventually denied those requests and reaffirmed its finding of waiver. On May 28, 2019, the DEC filed in this Court its petition for review of FERC's August 6, 2018 and April 2, 2019 orders. National Fuel intervened in support of FERC, and the proceeding was consolidated with a proceeding commenced by Sierra Club seeking review of the same FERC orders.

We review de novo FERC's interpretation of the Clean Water Act, a statute it does not administer. *N.Y. State Dept' of Env't Conservation v. Fed. Energy Regul. Comm'n*, 884 F.3d 450, 455 (2d Cir. 2018) ("*New York I*"). The DEC's interpretation of the Clean Water Act also receives no deference. *Id.* FERC's interpretation of the Natural Gas Act and its implementing regulations are entitled to *Chevron* deference because the Act is committed to FERC's administration. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *see also New York v. Fed. Energy Regul. Comm'n*, 783 F.3d 946, 953 (2d Cir. 2015).

## DISCUSSION

### I.

Before reaching the merits of the petitions, we first consider our jurisdiction because we have an independent obligation to ensure it even where,

as here, the parties do not contest it. *See Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020); *see also Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

Under the Natural Gas Act, a party aggrieved by a FERC order must first seek rehearing from FERC within 30 days. 15 U.S.C. § 717r(a). The aggrieved party then may seek judicial review in the appropriate court of appeals within 60 days of FERC's order resolving the rehearing request. *Id*. § 717r(b). Both requirements have been met here. The DEC was aggrieved by FERC's August 6, 2018 order finding a waiver, which effectively permitted National Fuel to proceed with the project despite New York's denial of a water quality certification, and it sought rehearing within 30 days of the waiver order. The DEC also timely filed a petition for review in this Court within 60 days of FERC's denial of rehearing.

However, a complicating factor in this case is that FERC, somewhat ironically, granted itself an indefinite extension of time to act on Petitioners' rehearing requests by issuing a tolling order. FERC eventually denied the rehearing requests more than seven months after it received them. This is relevant because the Natural Gas Act provides that a rehearing request "may be deemed to have been denied" if FERC fails to act within 30 days after it receives

11

such a request, allowing the aggrieved party to proceed to federal court. 15 U.S.C. § 717r(a).

Interpreting the same provision, the D.C. Circuit, sitting en banc, recently held that FERC may not use a tolling order of the kind used in this case to forestall judicial review. *Allegheny Def. Project*, 964 F.3d at 13. There, the court held that the agency "acts upon the application" only by, as enumerated in the statute, "(i) grant[ing] rehearing, (ii) deny[ing] rehearing, (iii) abrogat[ing] its order without further hearing, or (iv) modify[ing] its order without further hearing," and that issuing a tolling order does not constitute "the kinds of actions that prevent a deemed denial." *Id*. (quoting 15 U.S.C. § 717r(a)). Therefore, unless the agency takes one of the four steps specified in the statute, the aggrieved party may seek judicial review once 30 days has elapsed. *Id*.

Here, the DEC and Sierra Club, unlike the petitioners in *Allegheny*, decided to wait until FERC actually denied the rehearing requests, and did not attempt to seek judicial review within 60 days of the expiration of FERC's 30-day window to act upon their rehearing requests. Thus, the question for us is whether that decision was fatal to the DEC's and Sierra Club's ability to seek judicial review now. We think that it was not.

12

The text of Section 717r supports our conclusion. Subsection (a) provides that an application "*may* be deemed to have been denied" unless FERC acts upon it within 30 days. 15 U.S.C. § 717r(a) (emphasis added). The use of "may," instead of "shall" or "must," indicates to us that the clause is permissive rather than mandatory. And, importantly, subsection (a) does not direct the aggrieved party to act at the end of the 30-day time limit for agency action. *See id*. Instead, the following subsection, which requires any petition for review to be filed within 60 days of FERC's order resolving the rehearing request, specifies the deadline by which the aggrieved party must act. 15 U.S.C. § 717r(b); *Williston Basin Interstate Pipeline Co. v. Fed. Energy Regul. Comm'n*, 475 F.3d 330, 334 (D.C. Cir. 2006) ("The 60-day limitations provision is jurisdictional."). Thus, both subsections read together indicate to us that the 30-day timeline in subsection (a) binds only the agency, affording the aggrieved party discretion to either proceed to federal court after the expiration of the 30-day window or wait until FERC's order denying rehearing as prescribed in subsection (b).

Accordingly, we conclude that the DEC and Sierra Club were not required to seek judicial review within 60 days of the expiration of the 30-day time limit

13

for agency action and that we have appellate jurisdiction to review their petitions.

## II.

Having confirmed our jurisdiction, we proceed to the merits. Petitioners urge us to vacate FERC's waiver determination, contending that the agency erroneously concluded that Section 401's one-year review period cannot be extended by an agreement between the parties to change the receipt date. They also argue that FERC should have honored the parties' agreement, and that National Fuel should have been estopped from making, and FERC from reaching, the waiver argument FERC accepted. We address each argument in turn.

## A.

We have previously held that "a statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." *St. Regis Mohawk Tribe v. Brock*, 769 F.2d 37, 41 (2d Cir. 1985); *see also*

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158–59 (2003).[7] Section 401 meets both conditions: an agency has up to one year to act on a request for water quality certification or its certification authority will be waived. *See* 33 U.S.C. § 1341(a)(1). Thus, Section 401's one-year deadline is mandatory in a sense that it does not merely "spur" the agency to action, but it bars untimely action by depriving the agency of its authority after the prescribed time limit. *Barnhart*, 537 U.S. at 158.

That conclusion, however, does not get us far. The parties do not dispute that Section 401's mandatory deadline would invalidate an untimely agency action. Rather, their central dispute is whether the DEC's denial of National

---

[7] The dispute between the DEC and National Fuel about whether Section 401's one-year deadline can be waived or modified stems partly from their attempt to characterize it as either a "jurisdictional" or "claim-processing rule." Although the Supreme Court has previously used the former term to describe a statutorily prescribed time limit for agency action, *see Brock v. Pierce Cnty.*, 476 U.S. 253, 262–63 (1986), the Court has "endeavored in recent years to 'bring some discipline' to the use of the term 'jurisdictional,'" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). "[E]ven if important and mandatory," the Court said, a rule "should not be given the jurisdictional brand" unless it "governs a court's adjudicatory capacity." *Henderson*, 562 U.S. at 435 (citing *Union Pac. R. Co. v. Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009)). Heeding the Supreme Court's advice, we refrain from using the term to describe Section 401, which delineates a certifying agency's authority to issue or deny a water quality certification and not a court's adjudicatory authority.

Fuel's certification request should be regarded as untimely because the agreement to change the receipt date must be deemed void. In order to determine whether Congress intended to permit such an arrangement, we look to the text and legislative background of Section 401. *See Brock v. Pierce Cnty.*, 476 U.S. 253, 258 (1986) (examining the statutory language and legislative history to determine the scope agency authority); *St. Regis Mohawk Tribe*, 769 F.2d at 42–46 (looking at the legislative history to determine whether Congress meant to bar delayed agency action).

We have already had an occasion to examine the text of Section 401 in a recent case involving some of the same parties here. *New York I*, 884 F.3d 450. That case concerned whether Section 401 permits the DEC flexibility to decide the beginning of the one-year review period. *Id.* at 455. There, the DEC argued that its review process under Section 401 could begin only when it deemed an application "complete." *Id*. Much as it had done in this case, the DEC had from time to time asked an applicant to supplement an original application, contending that it needed additional information to continue its review. *Id*. at 453. We concluded that Section 401 does not "specify that th[e] time limit applies only for 'complete' applications," and that it cannot be interpreted to require a

16

"complete" application because that approach would allow a state agency not only to dictate when the review process can begin but also to delay it indefinitely. *Id*. at 455–56. We held that the "plain language of Section 401 outlines a bright-line rule regarding the beginning of the review: the timeline for a state's action regarding a request for certification 'shall not exceed one year' after 'receipt of such request.'" *Id*. at 455.

We apply that approach. Both here and in *New York I,* the DEC wished to change the receipt date to give itself more time to review an application. The only difference is that, rather than unilaterally altering the date of receipt as the date it considered the application "complete" as it did in *New York I*, the DEC in this case asked the applicant to stipulate to a different receipt date. However sincere the DEC's desire might have been to review the application as thoroughly and efficiently as possible by giving itself 36 more days, and however modest and reasonable that extension may have been, allowing the state to dictate the beginning of the review by agreement would "blur th[e] bright-line rule into a subjective standard."[8] *Id*. at 456.

---

[8] The DEC argues that Section 401 is analogous to the Coastal Zone Management Act ("CZMA") and urges us to consider the approach taken in *Millennium Pipeline Co. v. Gutierrez*, 424 F. Supp. 2d 168 (D.D.C. 2006). But a reference to that

The legislative background of Section 401 supports this conclusion, because it shows with a good deal of clarity that limiting a certifying state's discretion and eliminating a potential source of regulatory abuse was what the one-year limit in Section 401 was intended to achieve. While the original version of the House Bill did not set any time limit for state action, *see* H.R. Rep. No. 91-127, at 42–43, it was later amended to require affirmative state action "within a reasonable period of time" in order to prevent delay due to a certifying state's passive refusal or failure to act. 91 Cong. Rec. H2689 (daily ed. April 16, 1969); 91 Cong. Rec. H2608 (daily ed. April 15, 1969). Later, that provision was further refined, and the one-year time limit was included in the final version of the bill after the Senate bill was combined with the House bill. *See* Pub. L. No. 91-224, § 21(b)(1), 84 Stat. 91, 108 (1980); S. Rep. No. 91-351, at 113 (1969). When the Clean Water Act was reorganized and amended in 1972, the one-year time limit remained intact for the same reason. *See* H.R. Rep. No. 92-911, at 122 (1972)

case further supports the approach taken here. There, the parties also mutually agreed to extend the six-month review period for state action after the applicant supplemented its application with additional information. *Id*. at 173. However, unlike Section 401, "commencement" of review under CZMA occurs only when the application is complete with "all necessary information and data." *Id*. at 175 (quoting 16 U.S.C. § 1456(c)(3)); *see also* 15 C.F.R. § 930.60(a)-(b). We also note that the legislative history of Section 401, as discussed below, calls for us to interpret Section 401 differently.

(explaining that the one-year requirement was to ensure that "sheer inactivity by the State . . . will not frustrate the Federal application").

The DEC argues that the time limit was intended to protect an applicant's right to speedy resolution and, thus, an applicant should be able to waive or modify this right by agreeing to a different receipt date. But the legislative history shows that Congress was not primarily concerned with protecting the rights of individual applicants. Rather, it shows that Section 401's time limit was meant to protect the regulatory structure, particularly in situations involving multiple states: in other words, to "guard[] against" one state "sit[ting] on its hands and do[ing] nothing" at the expense of other states that are also involved in a multi-state project. 91 Cong. Rec. H2690 (daily ed. April 16, 1969); H.R. Rep. No. 92-911, at 122. Thus, in specifying a deadline for state action, we believe Congress intended to limit one state's ability to delay or otherwise upset multi-state licensing proceedings. In fact, Congress acknowledged during the debate leading up to the amendment adding the one-year limit that "there [we]re not any real safeguards in the bill to protect an applicant against arbitrary action by a State agency," but assumed that an applicant's interests would be sufficiently protected by "normal appeals procedures to the courts." 91 Cong. Rec. H2691

(daily ed. April 16, 1969); *see also* H.R. Rep. No. 92-911, at 122. Thus, consistent with our approach in *New York I*, the legislative background of Section 401 confirms that Congress could not have intended to permit the arrangement advocated by the DEC and Sierra Club, which introduces the uncertainty the one-year limitation period was intended to eliminate.[9]

Additional case law supports our conclusion that Section 401 was intended to curb conduct by certifying states that upsets the regulatory balance set by Congress. *Hoopa Valley Tribe v. Federal Energy Regulatory Commission*, 913 F.3d 1099 (D.C. Cir. 2019), involved coordinated activity under which the state certifying agencies and applicants agreed to repeatedly withdraw and resubmit certification requests for over a decade in order to avoid Section 401's one-year time limitation. The D.C. Circuit held that the states' "deliberate and contractual idleness" defied the clear statutory requirement and "serve[d] to circumvent a

---

[9] The DEC cites several cases for the proposition that statutory or constitutional provisions which confer privileges and rights to criminal defendants or civil litigants are generally subject to waiver. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 107 (2013) (statute of limitations); *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) (citing cases); *Shutte v. Thompson*, 82 U.S. (15 Wall.) 151, 159 (1872) (depositions). As we discussed above, however, Congress's primary reason for inserting a deadline in Section 401 was to prevent state inaction. Any resulting benefits to the applicants are only incidental. Thus, Section 401's one-year time limit is not the applicant's right to waive or modify.

20

congressionally granted authority over licensing, conditioning, and developing of a hydropower project." *Id.* at 1103–04. This coordinated withdrawal-and-resubmission approach, the court held, could not be used to extend the "absolute maximum" period of time specified in the statute, because it "could be used to indefinitely delay federal licensing proceedings and undermine FERC's jurisdiction to regulate such matters." *Id.* at 1104.

*Village of Morrisville, Vt.*, 173 FERC ¶ 61,156, ¶ 22 (Nov. 19, 2020), involved a different type of effort to avoid the statutory limitation. There, without coordinating with the state, the applicant repeatedly withdrew and resubmitted an application in order to avoid an unfavorable decision. *Id.* ¶¶ 3–7. FERC observed that even what it termed a "functional agreement" between the parties to withdraw and resubmit may be sufficient to find a waiver, but that the parties had not crossed the line. *Id.* ¶ 21. FERC found no coordinated agreement because it saw no indication that the state "requested or directed" the applicant to withdraw and resubmit "with the motivation to restart the one-year clock." *Id.* ¶¶ 21–22. Rather, according to FERC, the applicant "acted unilaterally and in its own interest" when it withdrew and resubmitted its application and,

21

consequently, the one-year clock restarted with each resubmission.[10] *Id.* ¶ 21; *see also id*. ¶¶ 15–19 (distinguishing the cases where FERC found a waiver based on an express or functional agreement or coordination between the parties to give a certifying state more time from the cases where an applicant acted unilaterally to restart the one-year clock).

While we see no indication that the DEC engaged in the kind of "deliberate and contractual idleness" found in *Hoopa Valley Tribe*, 913 F.3d at 1104, we conclude that Section 401's bright-line rule also precludes the line-blurring arrangement under review in this case. We are sympathetic to Petitioners' argument that states should be afforded flexibility given the complexity of the projects covered by Section 401 and the paramount interest of every state in protecting its water quality. However, we are bound by what we believe to be Congress' intention expressed in the text of Section 401 and

---

[10] *Morrisville* purported to provide further guidance on the issue *Hoopa Valley Tribe* left unresolved. There, the D.C. Circuit declined to "determine how different a request must be to constitute a 'new request' such that it restarts the one-year clock," because the yearly resubmissions there were always the same one-page letter. 913 F.3d at 1104. FERC concluded in *Morrisville* that the pertinent inquiry for waiver analysis is not whether the resubmitted application is materially different from the original application, but whether the state "deliberately circumvent[ed] the one-year deadline or agree[d] with the applicant to do so." 173 FERC ¶ 61,156, ¶ 24.

22

reinforced in its legislative history to reduce flexibility in favor of protecting the overall federal licensing regime.[11] Accordingly, we hold that Section 401 prohibits a certifying agency from entering into an agreement or otherwise coordinating with an applicant to alter the beginning of the review period, and that the DEC waived its certification authority by failing to act within one year of the actual receipt of the application.

B.

Having reached this conclusion, we turn to Petitioners' claim that equitable principles should have prevented FERC from reaching the waiver question. The DEC argues that National Fuel waived in the agreement its right to challenge the agreed-upon receipt date, that it is estopped from doing so, and that FERC should have honored that agreement. Sierra Club similarly argues that

---

[11] This conclusion does not mean that the states are left without options if they find that a particular application requires supplementation. As we stated in *New York I*, states can deny an application without prejudice within the one-year deadline, which will presumably prompt the applicant to resubmit the application with additional material. *See New York I*, 884 F.3d at 456. We have also noted that states are not "preclude[d] . . . from assisting applicants with revising their submissions." *Id.*; *see also Morrisville*, 173 FERC ¶ 61,156, ¶ 3 & n.5 (noting that Vermont Agency of Natural Resources ("ANR") had issued "preliminary terms and conditions for the water quality certification" prior to Morrisville's submission and had stated in a letter of receipt to Morrisville why its application was "technically" or "administratively" incomplete).

the parties to the agreement at issue were both sophisticated and well-represented, and that upholding FERC's waiver determination, despite such an agreement, would result in substantial injustice.

We are not without sympathy for these arguments. The DEC was, after all, flimflammed by National Fuel which made a commitment, later thought better of it, and walked away. But in the end, Petitioners' argument fails for the simple reason that FERC could not have been estopped from reaching the waiver issue because it could have addressed it on its own or at the behest of a third-party. As was the case in *Hoopa Valley Tribe*, a third-party, which was not a party to the agreement to change the receipt date, could have petitioned FERC for a waiver determination. 913 F.3d at 1102; *see also* 18 C.F.R. § 385.211. Further, regardless of when or whether a request from a third-party is submitted, FERC has broad discretion under the Natural Gas Act to sua sponte "reconsider and correct its order until the time for judicial review has expired." *Tenn. Gas Pipeline Co. v. Fed. Energy Regul. Comm'n*, 871 F.2d 1099, 1108 (D.C. Cir. 1989); *see also* 15 U.S.A. § 717r(a) ("Until the record in a proceeding shall have been filed in a court of appeals . . . , the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any

finding or order made or issued by it . . . .”). Even after the appeal is filed, courts have granted FERC’s request for a voluntary remand to reconsider a part of its order, even where there are no intervening events and without requiring FERC to admit error. *See, e.g.*, *Util. Solid Waste Activities Grp. v. Env’t Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018), *judgment entered*, No. 15-1219, 2018 WL 4158384 (D.C. Cir. Aug. 21, 2018).

Thus, because FERC could have reached the waiver question irrespective of National Fuel’s ability to raise it, the equitable considerations that Petitioners urge us to consider do not change the outcome.

III.

Finally, the DEC argues that National Fuel’s December 5, 2017 request for expedited action was untimely because it was not filed within the 30-day window to file a rehearing request under Section 19 of the Natural Gas Act, and that FERC’s disregard of this deadline was arbitrary and capricious. We disagree. While the filing may not have been properly labeled, we conclude that FERC’s treatment of the filing as a separate motion for a waiver determination was reasonable given FERC’s broad discretion in fashioning its own procedures. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543

25

(1978); *see also Forest Watch v. U.S. Forest Serv.*, 410 F.3d 115, 117–18 (2d Cir. 2005) (federal agency's "interpretation of its own rules (including which rule applies when) is entitled to deference").

The Natural Gas Act requires that a rehearing request be made within 30 days of the issuance of a FERC order, but this requirement applies only to parties "aggrieved by" a FERC order. 15 U.S.C. § 717r(a). Thus, § 717r(a) is not necessarily an appropriate vehicle for seeking a waiver determination. *Id.*; *Millennium Pipeline Co.*, 860 F.3d at 700–01 (explaining that a gas company cannot demonstrate injury based on state inaction, because the delay triggers Section 401's waiver provision which allows the company to "present evidence of waiver directly to FERC to obtain the agency's go-head to begin construction"). Moreover, because a request for waiver determination cannot be made until a certifying state concludes its review, which can take up to a year, *see* 33 U.S.C. § 1341(a)(1), it cannot always be filed within 30 days of any relevant FERC order. Accordingly, FERC concluded that a request for waiver determination may more appropriately be filed pursuant to the agency's general rule for filing a motion, which provides that it may be filed "at any time." 18 C.F.R. § 385.212(a)(1)

(simplified); *see also* 164 FERC ¶ 61,084, ¶ 6 n.10 (2018); 167 FERC ¶ 61,007, ¶ 27 & n.69 (2019).

Given the Natural Gas Act's silence on the matter, we find FERC's interpretation of the statute and its own regulation, though certainly not pellucid, to be at least "reasonable" and to represents the agency's legitimate policy choice which we have a duty to respect. *Chevron*, 467 U.S. at 843–44. Although the DEC contends that accepting FERC's position that waiver motions can be brought "at any time" means that, effectively, no time limit exists on when an applicant may present such arguments and forces the states to chase a moving target, we are obliged to defer to policy choices such as these. *See Nutritional Health All. v. Food & Drug Admin.*, 318 F.3d 92, 97 (2d Cir. 2003) ("[T]he responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones . . . ." (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)); *see also Florez v. Holder*, 779 F.3d 207, 212 (2d Cir. 2015) ("[W]e are not looking for the best interpretation, or the majority interpretation—only a reasonable one."). Our task here is limited to determining "whether the agency's

answer is based on a permissible construction of the statute," *Chevron*, 467 U.S. at 843, and we conclude that it is.[12]

For these reasons, we hold that FERC reasonably concluded that the Natural Gas Act's rehearing provision did not bar National Fuel from seeking a waiver determination outside of the 30-day window to file a rehearing request, and that FERC acted within its discretion in treating National Fuel's December 2017 filing as a timely motion for a waiver determination.

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.

---

[12] Beyond the DEC's argument that National Fuel's December 2017 filing was untimely under the National Gas Act, Petitioners do not otherwise claim that FERC's decision to treat the filing as a separate motion for waiver determination prejudiced them. Indeed, both Petitioners had an opportunity to respond to National Fuel's filing and brief the issue before FERC. *See* Waiver Order ¶ 8.